ROE ET AL., APPELLANTS, *v*. PLANNED PARENTHOOD SOUTHWEST OHIO

REGION ET AL., APPELLEES.

[Cite as *Roe v. Planned Parenthood Southwest Ohio Region*,

122 Ohio St.3d 399, 2009-Ohio-2973.]

*Discovery — Balancing test in Biddle v. Warren Gen. Hosp. does not create a*

*right to discover confidential medical records of nonparties in a private*

*lawsuit — R.C. 2151.421(M) affects a substantive right, and its retroactive*

*application would violate due process — Punitive damages are not*

*available under former R.C. 2151.421.*

(No. 2007-1832 — Submitted October 7, 2008 — Decided July 1, 2009.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-060557, 173 Ohio App.3d 414, 2007-Ohio-4318.

_____

SYLLABUS OF THE COURT

1.   The balancing test in *Biddle v. Warren Gen. Hosp.* (1999), 86 Ohio St.3d
     395, 715 N.E.2d 518, applies only as a defense to the tort of unauthorized
     disclosure of confidential medical information and does not create a right
     to discover confidential medical records of nonparties in a private lawsuit.
     (*Biddle v. Warren Gen. Hosp.,* clarified.)

2.   R.C. 2151.421(M) affects a substantive right, and its retroactive
     application would violate due process.

3.   In the absence of statutory authority, punitive damages are not available
     under former R.C. 2151.421.

_____

LUNDBERG STRATTON, J.

{¶ 1}   The primary issue before us is whether the plaintiffs-appellants,
John and June Roe, individually and as parents of Jane Roe, a minor, are entitled

to discover confidential abuse reports and medical records of nonparties in a private action for damages. A related predicate issue is whether a plaintiff is entitled to seek punitive damages for a breach of the duty to report suspected child abuse under former R.C. 2151.421, 2006 Sub.S.B. No. 238.

{¶ 2} The confidential abuse reports and medical records at issue are privileged from disclosure per R.C. 2317.02 and former 2151.421(H)(1). Redaction of personal, identifying information does not remove the privileged status of the records. Therefore, the reports and medical records are not subject to discovery pursuant to Civ.R. 26(B)(1).

{¶ 3} We hold that the balancing test in *Biddle v. Warren Gen. Hosp.* (1999), 86 Ohio St.3d 395, 715 N.E.2d 518, applies only as a defense to the tort of unauthorized disclosure of confidential medical information and does not create a right to discover confidential medical records of nonparties in a private lawsuit.

{¶ 4} In addition, we also hold that R.C. 2151.421(M) affects a substantive right and its retroactive application would violate due process and that, in the absence of statutory authority, there is no right to recover punitive damages under former R.C. 2151.421. Therefore, albeit for different reasons, we affirm the judgment of the court of appeals.

**Facts and Procedural History**

{¶ 5} The Roes filed this action against Planned Parenthood Southwest Ohio Region and others (collectively, "Planned Parenthood") alleging that Planned Parenthood illegally performed an abortion on their 14-year-old daughter, Jane. The Roes alleged that Planned Parenthood failed to notify them or to secure their consent in advance of the procedure and failed to obtain Jane's informed consent to the procedure in violation of R.C. 2919.121, 2919.12, and 2317.56. The Roes also alleged that Planned Parenthood breached its duty to report suspected child abuse of Jane in violation of former R.C. 2151.421. The plaintiffs sought compensatory and punitive damages and injunctive relief.

2

**{¶ 6}** In the fall of 2003, when Jane was 13 and in the eighth grade, she began a sexual relationship with her 21-year-old soccer coach, John Haller. In March 2004, Jane discovered that she was pregnant and told Haller. Haller convinced Jane to have an abortion. He called Planned Parenthood and attempted to schedule an abortion for her. Planned Parenthood told Haller that he could not schedule the procedure and that Jane would have to make the appointment. After this conversation, Haller told Jane to schedule it, and he also instructed her that if asked to provide a parent's telephone number, she should give Planned Parenthood his cell phone number in lieu of her father's phone number.

**{¶ 7}** Jane called Planned Parenthood and told an employee that she was 14 years old and that her parents could not accompany her. She asked whether her "stepbrother" could come with her. The employee asked whether Jane's parents knew about her pregnancy. Jane lied and told the employee that one or both of her parents knew. In fact, neither knew. Jane gave the employee her father's correct name and address, but she lied twice more, telling the employee that her father did not have a home phone number and then giving Haller's cell phone number as her father's phone number.

**{¶ 8}** Planned Parenthood scheduled the abortion for March 30, 2004. The employee told Jane that someone would have to stop at Planned Parenthood to pick up an information packet but that Jane did not have to personally retrieve the packet. Sometime before the procedure, Haller picked up the information packet for Jane.

**{¶ 9}** The Roes alleged that they do not know whether Planned Parenthood called or attempted to call the cell phone that belonged to Haller or, if it did, whether Planned Parenthood ever spoke to Haller. Planned Parenthood, on the other hand, presented evidence at a hearing that Jane had admitted that Planned Parenthood had called Haller's cell phone number and that Haller had pretended to be Jane's father and had authorized the procedure.

**{¶ 10}** Planned Parenthood also produced the parental-notification form filled out by the doctor who performed the procedure. The form indicated that the doctor had telephonically notified parent John Roe that Jane Roe was scheduled for an abortion at Planned Parenthood "no sooner than 24 hours from the time" the notice was given.

**{¶ 11}** Haller drove Jane to the clinic on the day of the procedure. When they arrived, a Planned Parenthood employee requested identification. Jane presented her school-identification card, and Haller provided his Ohio driver's license. They submitted the forms that Jane had filled out to an employee, who noted that Jane Roe's "brother John — [was] here today." Haller paid with a credit card.

**{¶ 12}** Before the procedure, Jane signed a form that set forth the nature and purpose of, and the medical risks associated with, the procedure. One form she signed stated that Planned Parenthood had met its statutory obligation to obtain the patient's informed consent. The Roes alleged that even if Jane had been fully informed, her age and emotional state precluded her from comprehending and understanding the risks associated with the procedure. The Roes also alleged that Jane's consent had not been given in a knowing, voluntary, or intelligent manner and that it had been procured under duress and coercion.

**{¶ 13}** Haller ended the relationship soon afterward. After the breakup, a teacher overheard an argument between Jane and Haller's sister, a classmate of Jane's, about Haller and his relationship with Jane, including references to Jane's sexual relationship with Haller. The teacher reported the suspected sexual abuse to the police. After a criminal investigation, Haller was convicted of seven counts of sexual battery. A criminal investigation was also conducted into Planned Parenthood's culpability, but the Hamilton County prosecutor did not prosecute Planned Parenthood for any statutory violation.

{¶ 14} After the Roes filed their lawsuit, they sought discovery from Planned Parenthood, including any reports of abuse made pursuant to R.C. 2151.421 and the medical records of nonparty minors who had been patients at Planned Parenthood during a ten-year period. Planned Parenthood produced Jane's medical records but refused to provide the confidential records of nonparties on the basis of the physician-patient privilege.

{¶ 15} The plaintiffs moved to compel discovery. Planned Parenthood moved for a protective order to prevent disclosure. The trial court followed *Richards v. Kerlakian*, 162 Ohio App.3d 823, 2005-Ohio-4414, 835 N.E.2d 768, ¶ 5, which cited *Biddle* for the proposition that confidential information may be discoverable to further a countervailing interest that outweighs the nonparty patient's interest in confidentiality.

{¶ 16} The trial court concluded that the Roes had a "tremendous interest" in the requested documents and that their need for the information outweighed the nonparty patients' interest in maintaining the confidentiality of their records. The court ordered all patient-identifying information redacted from the records produced. The court granted the plaintiffs' motion to compel and overruled the defendants' motion for a protective order. The court did not specifically analyze the claims for punitive damages.

{¶ 17} The court of appeals reversed. *Roe v. Planned Parenthood Southwest Ohio Region*, 173 Ohio App.3d 414, 2007-Ohio-4318, 878 N.E.2d 1061. The appellate court, citing both *Biddle* and *Richards* for the proposition that "only where the privileged information is necessary to further or protect a countervailing interest is disclosure proper," concluded that the confidential abuse reports and medical records of nonparties were not necessary to the Roes' case and, even if tenuously necessary, the potential invasion of the privacy rights of the nonparties outweighed the probative value of the records to this case. Id. at ¶ 34, 42-44. The court concluded that R.C. 2151.421, which imposes the duty to report

abuse, does not provide for punitive damages. Thus, the Roes' claim for punitive damages based on this statute had no merit. Id. at ¶ 37.

{¶ 18} After having initially declined jurisdiction, upon reconsideration, we accepted jurisdiction of this discretionary appeal on Proposition of Law Nos. II, IV, V, and VI. *Roe v. Planned Parenthood Southwest Ohio Region*, 117 Ohio St.3d 1443, 2008-Ohio-1279, 883 N.E.2d 459.

## Postargument Procedure

{¶ 19} Following oral argument in this matter on October 7, 2008, counsel for the Roes filed a citation to additional authority, i.e., recently enacted 127 Am.Sub.H.B. No. 280 ("H.B. 280"), which amended R.C. 2151.421. On April 3, 2009, we ordered the parties to brief the following issue:

{¶ 20} "Do the provisions of 127 Am.Sub.H.B. 280 (effective April 7, 2009) apply to this case and, if so, what effect do those provisions have on the issues in this case?" *Roe v. Planned Parenthood Southwest Ohio Region,* 121 Ohio St.3d 1434, 2009-Ohio-1619, 903 N.E.2d 1218.

## The Roes' Claims

{¶ 21} The Roes have alleged that Planned Parenthood breached its duties under R.C. 2919.12 and 2919.121 by failing to notify them of the intent to perform an abortion on Jane and failing to obtain their consent to perform the procedure. R.C. 2919.12 prohibits any person from performing an abortion upon a pregnant, unmarried woman under age 18 without giving at least 24 hours' actual notice in person or by telephone to the woman's parents or obtaining a parent's written consent. R.C. 2919.121 prohibits a person from performing an abortion upon a pregnant minor without the written consent of the minor and one parent.[1] Both statutes provide that one who violates this statute may be liable for compensatory and punitive damages.

---

1. R.C. 2919.121 was enacted in 1998. 147 Ohio Laws, Part II, 3868, 3875. Shortly afterward, a lawsuit was filed in federal court that challenged its constitutionality. The court issued an order

**{¶ 22}** The Roes also alleged that Planned Parenthood performed the procedure on Jane without first obtaining her informed consent in violation of R.C. 2317.56. The statute requires that at least 24 hours prior to the procedure, a physician meet with the pregnant woman in person and that published materials about the procedure be given to her. It also requires that she give written consent to the procedure. A person who fails to comply may be liable in compensatory and punitive damages.

**{¶ 23}** The Roes further alleged that Planned Parenthood had reason to suspect that Jane was sexually involved with an adult, but that it did not report the relationship, in violation of R.C. 2151.421. They alleged that as matter of policy and/or pattern and practice, Planned Parenthood does not report known or suspected child abuse with respect to the minors to whom it provides medical services.

**{¶ 24}** The Roes asked the court to enjoin Planned Parenthood from further statutory violations and to require it to comply with the law, and they have asked for compensatory and punitive damages.[2]

### Discovery Sought

**{¶ 25}** The Roes sought statistical data from Planned Parenthood about the number of abortions performed and the number of reports of suspected or known sexual abuse made over a ten-year period. They also sought the abuse reports made pursuant to R.C. 2151.421 and the redacted medical records of

---

that enjoined the state and county from enforcing the new statute while the case was pending. *Cincinnati Women's Serv., Inc. v. Taft* (S.D.Ohio 2005), 466 F.Supp.2d 934, 937. Since then, the Sixth Circuit has upheld the provision that required 24-hour informed consent, but severed the provision that limited a minor to filing one petition for a judicial bypass of parental consent per pregnancy. *Cincinnati Women's Serv., Inc. v. Taft* (C.A.6, 2006), 468 F.3d 361.

2. The Roes voluntarily dismissed their causes of action for conspiracy and intentional infliction of emotional distress.

minors who were patients at Planned Parenthood but who are not parties to the action.

**{¶ 26}** The Roes do not dispute that they are seeking confidential, privileged information of third parties, but claim that redaction removes the confidential status. They admit that the statistics are published and available from other sources.[3] This dispute centers solely upon the Roes' request for the abuse reports and medical records of third persons who are not parties. See former R.C. 2151.421(H)(1) (confidentiality of child-abuse reports) and R.C. 2317.02(B)(1) ("A physician or a dentist [shall not testify] concerning a communication made to the physician or dentist by a patient in that relation or the physician's or dentist's advice to a patient, except as otherwise provided * * * ").

**{¶ 27}** Civ.R. 26(B)(1) permits discovery "regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action." (Emphasis added.) The information sought need not be admissible at trial if it appears reasonably calculated to lead to the discovery of admissible evidence. Id. The Roes contend that the documents they seek are relevant and necessary to their claims and are otherwise unavailable.

**{¶ 28}** Civ.R. 26 clearly excludes privileged information from the general rule of discovery. Thus, even assuming that the information the Roes seek is relevant and may lead to the discovery of admissible evidence, they must establish an exception to the privilege in order to discover this information; relevancy itself is not sufficient for purposes of discovery under Civ.R. 26 when matters are privileged. The Roes rely on *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395, 715 N.E.2d 518, as authority to discover the medical records of

---

3. According to the Roes, Planned Parenthood publishes statistical data on the number of abortions performed and the number of abuse reports made in annual reports and disseminates the information to the Ohio Department of Health and Planned Parenthood Federation of America.

nonparties if a plaintiff's need for the records outweighs the nonparties' interest in protecting the confidential nature of the records.

{¶ 29} Because this case involves discovery of confidential and privileged information, we review the matter de novo. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13.

### Application of H.B. 280

{¶ 30} As a preliminary matter, we address the postargument briefs and whether H.B. 280 may apply retroactively in this case.

{¶ 31} The Roes' first proposition of law asserts that a plaintiff is entitled to seek punitive damages for a defendant's systematic and intentional breach of the duty to report suspected abuse under R.C. 2151.421. The Roes have requested the abuse reports from Planned Parenthood to establish their claim for punitive damages.

{¶ 32} R.C. 2151.421 places a duty on persons with special relationships to minors to report suspected or known abuse or neglect. In December 2008, the General Assembly enacted H.B. 280, which amended R.C. 2151.421, adding division (M) and supplementing division (H), both of which may affect the outcome of this case if applied retroactively. R.C. 2151.421(M) provides that a person may be liable for compensatory and exemplary damages for violating the reporting requirements, and a person who brings a civil action pursuant to division (M) may use reports of other incidents of known or suspected abuse or neglect, with identifying information redacted, in that civil action. R.C. 2151.421(H)(1) was supplemented to allow the use of confidential abuse reports made under that division in a civil action brought pursuant to section (M).

{¶ 33} To determine whether R.C. 2151.421(H) and (M) may be retroactively applied in this matter, we apply a two-part analysis. *Ackison v. Anchor Packing Co.*, 120 Ohio St.3d 228, 2008-Ohio-5243, 897 N.E.2d 1118, ¶ 12. The first part examines whether the General Assembly intended for the

statute to apply retroactively.  Id.  If so, the second part requires that we determine whether the amendments are substantive, a status that would render them unconstitutionally retroactive, or merely remedial.  Id., ¶ 13, citing *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 353, 721 N.E.2d 28.

{¶ 34} In this case, the General Assembly expressly provided that the amendments were intended to apply retroactively to civil actions pending on the effective date of the act, April 7, 2009.  H.B. 280, Section 4.  Thus, they meet the threshold inquiry of retroactivity.  We next consider whether the amendments are substantive or remedial.   We have held that substantive law "impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction."   *Bielat,* 87 Ohio St.3d at 354, 721 N.E.2d 28.   Procedural or remedial law prescribes methods of enforcement of rights or obtaining redress.  *French v. Dwiggins* (1984), 9 Ohio St.3d 32, 34, 9 OBR 123, 458 N.E.2d 827.

{¶ 35} Former R.C. 2151.421 made no reference to any civil damages for violating the statute.  Division (M) now provides:

{¶ 36} "Whoever violates division (A) of this section is liable for compensatory and exemplary damages to the child who would have been the subject of the report that was not made."

{¶ 37} The newly enacted division (M) adds a punitive measure of damages that did not previously exist.  It does not merely clarify and confirm that a plaintiff had available both compensatory and exemplary damages for a common-law violation of the statute as the Roes contend.  Instead, such a change is akin to a statutory penalty, which is substantive.  *Osai v. A & D Furniture Co.* (1981), 68 Ohio St.2d 99, 100, 22 O.O.3d 328, 428 N.E.2d 857.  Thus, we hold that R.C. 2151.421(M) affects a substantive right, and its retroactive application would violate due process.

{¶ 38} Former R.C. 2151.421(H)(1) provided that except in limited situations that do not apply here, reports of child abuse made pursuant to R.C. 2151.421 are confidential. H.B. 280 created an exception to nondisclosure by allowing the use of abuse reports in a civil action brought pursuant to R.C. 2151.421(M), provided that any identifying information about the child who is the subject of the report is redacted. Because division (M) may not be retroactively applied in this case, it follows that the Roes may not rely on the discovery provisions of (H)(1), because they apply only to civil actions brought pursuant to division (M). Therefore, we must apply the version of R.C. 2151.421 in effect when the Roes' cause of action arose to determine whether a plaintiff is entitled to seek punitive damages for a defendant's failure to report suspected abuse.

**Availability of Punitive Damages under Former R.C. 2151.421**

{¶ 39} Former R.C. 2151.421 made no reference to any civil damages for a violation of the statute. The Roes contend that the absence of any mention of damages does not preclude the availability of punitive damages. They argue that this court's interpretation of the word "liability" in *Campbell v. Burton* (2001), 92 Ohio St.3d 336, 341-342, 750 N.E.2d 539, to include civil and criminal liability, coupled with the interpretation of "damages" in *Rice v. CertainTeed Corp.* (1999), 84 Ohio St.3d 417, 419-420, 704 N.E.2d 1217, as including both compensatory and punitive damages, entitles them to seek all legally recognized relief. They also contend that courts have permitted plaintiffs to seek both compensatory and punitive damages under Section 1983, Title 42, U.S.Code, although punitive damages are not specified in that statute.

{¶ 40} In *Campbell v. Burton*, this court broadly construed the word "liability" in R.C. 2744.02(B)(5) and 2744.03(A)(6)(c) and determined that a political subdivision and its employee could not claim immunity from liability under the Political Subdivision Tort Liability Act for the failure to perform a duty imposed by R.C. 2151.421. Id., 92 Ohio St.3d 336, 750 N.E.2d 539, paragraphs

one, two, and three of the syllabus. *Campbell* held that a political subdivision and its employee may be held liable for a violation of R.C. 2151.421, but it did not discuss damages.

{¶ 41} In *Rice v. CertainTeed Corp.,* 84 Ohio St.3d at 421, 704 N.E.2d 1217, we held that R.C. 4112.99 authorizes an award of punitive damages in a civil employment-discrimination action arising under R.C. 4112.02. R.C. 4112.99 provides for "a civil action for damages, injunctive relief, or any other appropriate relief." We concluded that this language includes punitive damages. *Rice*, 84 Ohio St.3d at 421, 704 N.E.2d 1217.

{¶ 42} *Campbell* addressed liability only, and its interpretation has since been limited to civil liability *only when* expressly imposed by a section of the Revised Code. See R.C. 2744.02 and 2744.03, 149 Ohio Laws, Part II, 3500, 3508, 3510, effective April 9, 2003. *Rice* interpreted a statute that authorized damages. Here, former R.C. 2151.421 is silent as to any damages. We cannot insert words into a statute. Instead, we must give effect only to the words used. *Rice*, 84 Ohio St.3d at 419, 704 N.E.2d 1217. The General Assembly did not include a provision for civil damages in the former version of the statute, much less punitive damages. Without express authority for such an award, we are constrained by the statutory language. *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 67.

{¶ 43} Furthermore, there can be no award of punitive damages for violating a statutory duty that did not exist at common law unless the award is expressly authorized by statute. *Kleybolte v. Buffon* (1913), 89 Ohio St. 61, 66, 105 N.E. 192. There was no common-law duty to report child abuse. The statute that created the duty does not authorize any damages for its breach. Therefore, we hold that in the absence of statutory authority, punitive damages are not available under former R.C. 2151.421.

**Discovery of Child Abuse Reports per R.C. 2151.421**

{¶ 44} R.C. 2151.421(H)(1) provides for "the use of reports of other incidents of known or suspected abuse or neglect in a civil action or proceedings brought pursuant to division (M) of this section." There is no exception for discovery in other types of civil actions. Because we have determined that division (M) may not be retroactively applied, the Roes do not have a civil action pursuant to division (M), and they may not rely on amended (H)(1) to discover and use reports of other incidents of abuse in this action.

{¶ 45} Thus, we look to former R.C. 2151.421(H), which makes no exception for discovery of abuse reports for this kind of civil action. In addition, to the extent that the abuse reports contain information obtained within the physician-patient relationship, that information is privileged from disclosure. This case does not fit within the exception to the physician-patient privilege involving "a child's injuries, abuse, or neglect * * * in any judicial proceeding resulting from a report submitted pursuant to this section." R.C. 2151.421(G)(1)(b). Because this case does not arise from a report submitted about Jane, R.C. 2151.421(G)(1)(b) does not apply. Consequently, these abuse reports are confidential pursuant to former R.C. 2151.421(H) and are not discoverable in this case.

### Discovery of Confidential Records of Third Parties

{¶ 46} The Roes also seek medical records of nonparties. In general, medical records are confidential and not subject to disclosure. *Hageman v. Southwest Gen. Health Ctr.*, 119 Ohio St.3d 185, 2008-Ohio-3343, 893 N.E.2d 153, ¶ 9. The Roes rely on *Biddle,* 86 Ohio St.3d 395, 715 N.E.2d 518, as authority for discovery of the confidential medical records of nonparties because "disclosure is necessary to protect or further a countervailing interest that outweighs the patient's interest in confidentiality." Id. at paragraph two of the syllabus.

**{¶ 47}** *Biddle* was a tort case in which we addressed *liability* for unauthorized disclosure and stressed the utmost importance of the patient's right to confidentiality of medical communications. Id., 86 Ohio St.3d 395, 715 N.E.2d 518, paragraph one of the syllabus. *Biddle* did not involve *discovery* of documents, but rather the *improper release* of documents. Nevertheless, apparently litigants have used *Biddle* to seek nonparty confidential medical information, and courts in several types of tort cases have interpreted *Biddle* as creating a right to obtain nonparty confidential medical information. See *Fair v. St. Elizabeth Med. Ctr.* (2000), 136 Ohio App.3d 522, 527, 737 N.E.2d 106; *Richards v. Kerlakian*, 162 Ohio App.3d 823, 2005-Ohio-4414, 835 N.E.2d 768, ¶ 5; *Alcorn v. Franciscan Hosp. Mt. Airy Campus*, Hamilton App. No. C-060061, 2006-Ohio-5896, ¶ 17; *Cepeda v. Lutheran Hosp.*, Cuyahoga App. No. 90031, 2008-Ohio-2348, ¶ 15.

**{¶ 48}** However, paragraph two of the syllabus in *Biddle* addressed the *defenses* to the tort of unauthorized disclosure of confidential medical information — i.e., the circumstances under which a physician or hospital may release confidential medical records in the absence of a waiver without incurring tort liability. *Biddle* did not create a litigant's right to discover the confidential medical records of nonparties in a private lawsuit. Any such exception to the physician-patient privilege is a matter for the General Assembly to address. See *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, ¶ 13 ("this court * * * has consistently rejected the adoption of judicially created waivers, exceptions, and limitations for testimonial privilege statutes").

**{¶ 49}** The Roes also argue that the trial court ordered all patient-identifying information redacted, so the anonymity of the patients will be retained, and the confidential and privileged nature of the documents will be removed. Redaction of personal information, however, does not divest the privileged status of confidential records. Redaction is merely a tool that a court

14

may use to safeguard the personal, identifying information within confidential records that have become subject to disclosure either by waiver or by an exception. See R.C. 2317.02(B)(1)(d).

{¶ 50} Here, the Roes seek confidential information of third parties that is privileged from disclosure. R.C. 2151.421(H)(1) and 2317.02. Because *Biddle* applies as a defense to the tort of unauthorized disclosures of confidential medical information, we hold that *Biddle* does not authorize the Roes to discover the confidential medical records of nonparties from Planned Parenthood.

{¶ 51} The Roes and amici curiae assert that this discovery will further Ohio's public policy in protecting children. We note, however, that this case is about Planned Parenthood's alleged violation of duties as to Jane Roe only. The Roes have not filed a class action on behalf of other alleged victims. The case has no criminal implications: Haller has already been convicted of the crimes, and the prosecutor has investigated but declined to pursue criminal charges against Planned Parenthood.

{¶ 52} To the extent that the Roes and various amici curiae also advance public policy arguments in support of disclosure of confidential medical records, whether such public policy issues are sufficient to overcome a nonparty patient's right to the confidentiality of medical information should likewise be addressed by the General Assembly, not the judiciary. The General Assembly has addressed the Roes' concerns about the reporting of child abuse; however, those changes in the law apply prospectively.

## Conclusion

{¶ 53} The confidential abuse reports and medical records at issue are privileged from disclosure per R.C. 2317.02 and former 2151.421(H)(1). Redaction of personal, identifying information does not remove the privileged status of the records. Therefore, the reports and medical records are not subject to discovery pursuant to Civ.R. 26(B)(1).

**{¶ 54}** *Biddle*, followed by *Hageman*, 119 Ohio St.3d 185, 2008-Ohio-3343, 893 N.E.2d 153, addressed *improper disclosure* without prior authorization and *emphasized* a patient's right to the privacy of medical information. Id. at ¶ 17. *Biddle* addressed the privilege to disclose confidential medical information in the context of a defense to the tort of unauthorized disclosure. *Biddle* does not create the right to discover the confidential medical records of nonparties in a private lawsuit.

**{¶ 55}** The Roes still may pursue their private claims for damages against Planned Parenthood for statutory violations: whether Planned Parenthood performed an unlawful abortion on Jane under R.C. 2919.12 and 2919.121, which authorize an award of punitive damages, whether Jane's consent was proper under R.C. 2317.56, which authorizes an award of punitive damages, and whether it had a duty to report suspected abuse of Jane under former R.C. 2151.421. The Roes are entitled to discover Jane's own medical records. They may pursue discovery of other matters, *not privileged*, that are relevant and reasonably calculated to lead to the discovery of admissible evidence. Therefore, for the foregoing reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., and LANZINGER and CUPP, JJ., concur.

PFEIFER, J., concurs separately.

O'DONNELL, J., concurs in part and dissents in part.

DONOVAN, J., dissents.

MARY E. DONOVAN, J., of the Second Appellate District, sitting for O'CONNOR, J.

_____

**PFEIFER, J., concurring.**

**{¶ 56}** I concur in the opinion, with two exceptions, and in the judgment.

{¶ 57} I disagree with the majority's decision to clarify *Biddle v. Warren Gen. Hosp.* (1999), 86 Ohio St.3d 395, 715 N.E.2d 518. This case is not the proper vehicle to revisit *Biddle* because doing so is not necessary to resolve the issue before us.

{¶ 58} I concur in the majority opinion's conclusion that "[f]ormer R.C. 2151.421 made no reference to any civil damages for a violation of the statute," and therefore, that punitive damages are unavailable to the Roes. I disagree with the majority's decision to discuss *Kleybolte v. Buffon* (1913), 89 Ohio St. 61, 105 N.E. 192. That case is not necessary to reach the holding that the majority reaches.

{¶ 59} With these exceptions, I join the majority opinion.

_____

**CUPP, J., concurring.**

{¶ 60} Plaintiffs' claims arise out of troubling circumstances. These circumstances involve an adult soccer coach engaging in criminal conduct by abusing his position of authority and having a sexual relationship with a 13-year-old, who was a player on his soccer team. When the minor became pregnant through this illicit relationship, the coach convinced her to have an abortion. He directed and guided her in a scheme to obtain the abortion without notice to, or the knowledge of, the minor's parents, as the majority opinion details. The abortion took place at the clinic of Planned Parenthood Southwest Ohio Region.

{¶ 61} The parents of the minor now seek to establish through their lawsuit that Planned Parenthood facilitated the unlawful abortion by breaching its statutory duties of reporting suspected child abuse, of notifying a parent and obtaining consent, and of obtaining the minor's informed consent.

{¶ 62} The Roes seek compensatory and punitive damages. To gather the needed facts and information to establish their claim, the Roes also seek through discovery to compel Planned Parenthood to provide the abuse reports and medical

records of nonparties. The underlying circumstances of this case are deeply troubling. However, a court of law is duty-bound to resolve the legal issues before it by applying the law in the same manner in which it would apply the law to cases with less disturbing facts but involving the same legal issues.

{¶ 63} In reviewing the language of the statutory provisions underlying claims for relief, courts are constrained to "look to the statutory language and the 'purpose to be accomplished.' " *Rice v. CertainTeed Corp.* (1999), 84 Ohio St.3d 417, 419, 704 N.E.2d 1217, quoting *State ex rel. Richard v. Bd. of Trustees of the Police & Firemen's Disability & Pension Fund* (1994), 69 Ohio St.3d 409, 411, 632 N.E.2d 1292. "Words used in a statute must be taken in their usual, normal or customary meaning * * * [and] it is the duty of the court to give effect to the words used and not to insert words not used." *State ex rel. Richard,* 69 Ohio St.3d at 412.

{¶ 64} As the majority opinion explains, former R.C. 2151.421, 2006 Sub.S.B. No. 238, plainly does not permit a private plaintiff to obtain civil damages for the failure of a person to comply with the statute's reporting requirements for suspected child abuse. The parties also do not contest that the text of former R.C. 2151.421 does not explicitly provide for recovery of civil damages. Instead, the statute expressly provides criminal penalties as the remedy for a violation of the statutory reporting duties. R.C. 2151.99(A). Because the statute does not authorize civil damages, we may not judicially insert words to permit a remedy the statute plainly does not provide.

{¶ 65} The same analysis is applicable to plaintiffs' claims for access to the abuse reports and medical records of other persons who are not parties to this action. Under former R.C. 2151.421(H), the version in effect when the conduct giving raise to this action occurred, such abuse and medical reports are confidential, and as the majority opinion states, no exception is provided in the statute for the discovery of abuse reports of nonparties to the civil action.

Moreover, the balancing-of-interests test in *Biddle v. Warren Gen. Hosp.* (1999), 86 Ohio St.3d 395, 715 N.E.2d 518, paragraph two of the syllabus, is unavailing to plaintiffs. The *Biddle* balancing test applies only to claims for damages from unauthorized release of confidential medical records and not to the circumvention of restrictions on the confidentiality of unreleased records.

{¶ 66} The legislature has, subsequent to the filing of plaintiff's suit, amended the controlling statutes to provide most of the relief that plaintiffs now seek from this court. However, those amendments cannot be applied to this case. As the majority opinion correctly analyzes, the substantive amendment, R.C. 2151.421(M), cannot be applied without creating an unconstitutional retroactive impact, and the remedial provision, R.C. 2151.421(H), which would permit plaintiffs access to the abuse reports of nonparties they seek, is restrictively drafted. R.C. 2151.421(H) is expressly linked to the substantive provision, which may not constitutionally be applied to the present case.

{¶ 67} In the final analysis, then, plaintiffs can be granted the results they seek in this court only if we judicially amend the child-abuse-reporting and the patient-physician-privilege statutes or disregard the constitutional prohibition on retroactive substantive legislation.

{¶ 68} To do so, however, would be to step across the line that marks the boundary of authority that our constitutional system of separation of powers has allocated to the judiciary. That is a step we may not properly take.

{¶ 69} I concur.

LANZINGER, J., concurs in the foregoing opinion.

_____

**O'DONNELL, J., concurring in part and dissenting in part.**

{¶ 70} While I concur in the majority's decision regarding punitive damages and the confidentiality of child-abuse reports pursuant to former R.C. 2151.421, I respectfully dissent from its holding that third-party medical records

are never subject to discovery under Civ.R. 26(B)(1). In my view, this court's decision in *Biddle v. Warren Gen. Hosp.* (1999), 86 Ohio St.3d 395, 715 N.E.2d 518, sets forth an appropriate test for determining when a claimant may discover information that might otherwise be subject to the physician-patient privilege. Moreover, trial courts have the authority to enter discovery orders that protect the privacy interests of patients whose records are disclosed in these circumstances. Civ.R. 26(B)(6) and (C). Thus, I would reverse the judgment of the court of appeals in part and reinstate the trial court's order compelling Planned Parenthood to disclose the third-party medical records, subject to a protective order and redaction of information that identifies these patients.

**{¶ 71}** In *Biddle*, this court recognized that the physician-patient privilege and a physician's duty of confidentiality are not absolute. We reasoned that " '[a]lthough public policy favors the confidentiality [of medical information], there is a countervailing public interest to which it must yield in appropriate circumstances.' " *Biddle*, 86 Ohio St.3d at 402, 715 N.E.2d 518, quoting *MacDonald v. Clinger* (1982), 84 A.D.2d 482, 487, 446 N.Y.S.2d 801. As we further emphasized, "special situations may exist where the interest of the public, the patient, the physician, or a third person are of sufficient importance to justify the creation of a conditional or qualified privilege to disclose in the absence of any statutory mandate or common-law duty." Id., citing *Hague v. Williams* (1962), 37 N.J. 328, 336, 181 A.2d 345; *Berry v. Moench* (1958), 8 Utah 2d 191, 197, 331 P.2d 814; *Simonsen v Swenson* (1920), 104 Neb. 224, 228, 177 N.W. 831; Johnston, Breach of Medical Confidence in Ohio (1986), 19 Akron L.Rev. 373, 384-392; Vickery, Breach of Confidence: An Emerging Tort (1982), 82 Colum.L.Rev. 1426, 1462-1468.

**{¶ 72}** Thus, we determined that a medical provider may "disclose otherwise confidential medical information in those special situations where disclosure is made in accordance with a statutory mandate or common-law duty,

*or where disclosure is necessary to protect or further a countervailing interest which outweighs the patient's interest in confidentiality.*"  (Emphasis added.) 86 Ohio St.3d 395, 402, 715 N.E.2d 518.

{¶ 73} Ohio's appellate courts have since relied on this language for the proposition that a litigant may compel discovery of third-parties' medical records from a physician or hospital pursuant to Civ.R. 26(B).  See *Fair v. St. Elizabeth Med. Ctr.* (2000), 136 Ohio App.3d 522, 737 N.E.2d 106; *Richards v. Kerlakian*, 162 Ohio App.3d 823, 2005-Ohio-4414, 835 N.E.2d 768; *Alcorn v. Franciscan Hosp. Mt. Airy Campus*, Hamilton App. No. C-060061, 2006-Ohio-5896; *Cepeda v. Lutheran Hosp.*, Cuyahoga App. No. 90031, 2008-Ohio-2348.  Unlike the majority, I am of the view that these decisions reasonably interpret *Biddle*.

{¶ 74} The test we crafted in the syllabus of *Biddle*, permitting disclosure of medical records "where disclosure is necessary to protect or further a countervailing interest that outweighs the patient's interest in confidentiality," authorizes trial courts to balance the interests involved in these circumstances. Litigants have a right to liberal discovery of information under the Civil Rules of Procedure.  See *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 661-662, 635 N.E.2d 331.  And while patients undeniably have an interest in maintaining the confidentiality of their medical information, the Civil Rules provide the means to safeguard that interest, and we have consistently recognized trial courts' broad authority to enter protective orders in discovery.  See, e.g., *State ex rel. Abner v. Elliott* (1999), 85 Ohio St.3d 11, 16, 706 N.E.2d 765.

{¶ 75} In this regard, *Biddle* is consistent with the decisions of numerous other states, which have similarly recognized the right to compel discovery of medical records from physicians and hospitals.  As the court stated in *Bennett v. Fieser* (D.Kan.1994), 152 F.R.D. 641, "The vast majority of states that have addressed this issue have held that non-party patient medical records are discoverable and do not violate the physician-patient privilege where there are

adequate safeguards to protect the identity of the non-party patient." Id. at 642-643, citing *Terre Haute Regional Hosp. v. Trueblood* (Ind.1992), 600 N.E.2d 1358, 1359; *Ventimiglia v. Moffitt* (Fla.App.1986), 502 So.2d 14; *Ziegler v. Superior Court in and for Pima Cty.* (1982), 134 Ariz. 390, 394, 656 P.2d 1251; and *Community Hosp. Assn. v. Dist. Court in and for Boulder Cty.* (1977), 194 Colo. 98, 100, 570 P.2d 243. See also *Amisub, Inc. v. Kemper* (Fla.App.1989), 543 So.2d 470; *Rudnick v. Superior Court of Kern Cty.* (1974) 11 Cal.3d 924, 523 P.2d 643, 114 Cal.Rptr. 603; *Osterman v. Ehrenworth* (1969), 106 N.J.Super. 515, 256 A.2d 123; but see *Parkson v. Cent. DuPage Hosp.* (1982), 105 Ill.App.3d 850, 61 Ill.Dec. 651, 855, 435 N.E.2d 140.

{¶ 76} Particularly persuasive is the Supreme Court of Indiana's decision in *Trueblood*, which held, "[W]here adequate safeguards exist to protect the identity and confidentiality of the non-party patient, the trial court may allow the discovery of the non-party patient medical records even where the patient has not waived the physician-patient privilege." 600 N.E.2d at 1362. The court explained that "[a]long with a patient's individual interest in quality medical care, the public has an interest in being protected from incompetent physicians" and that "[i]t is unlikely that a patient would be inhibited from confiding in his physician where there is no risk of humiliation and embarrassment, and no invasion of the patient's privacy." Id. at 1361, citing *Ziegler*, 656 P.2d at 1255. And as the court stated, "[i]n situations where the medical records are relevant, a 'blanket prohibition against examination and use against the hospital of such records would result in an injustice.' " Id., quoting *Ziegler*, 656 P.2d. at 1255.

{¶ 77} Based on this authority and on *Biddle*, I would reverse the decision of the appellate court to vacate the trial court's entry granting the Roes' motion to compel discovery of medical records held by Planned Parenthood. In my view, the medical records requested by the Roes satisfy Civ.R. 26(B)(1), which provides

that information is discoverable when it is "relevant to the subject matter involved in the pending action" and that "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." We should not disturb the trial court's ruling in this regard in the absence of an abuse of discretion. See *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 57, 63 O.O.2d 88, 295 N.E.2d 659. Furthermore, because the trial court placed the medical records under a protective order and ordered them redacted, the physician-patient privilege will not be violated by their disclosure by Planned Parenthood.

{¶ 78} Accordingly, I dissent from this part of the majority's decision.

_____

**DONOVAN, J., dissenting.**

{¶ 79} I respectfully dissent. I would reverse the judgment of the court of appeals, thus reinstating the trial court's order compelling discovery. My focus in this dissent will not be on 2008 Am.Sub.H.B. No. 280 ("H.B. 280") , as I find the amendments to be merely remedial, since the Roes, in my view, are entitled to the discovery initially ordered by the trial court under pre-existing, as well as current, law. The Roes should be entitled to redress a pre-existing actionable wrong.

{¶ 80} The Roes have presented cognizable claims; they should be able to pursue discovery on their claims. "The truth must be known, as far as possible, to enable the law to provide justice in each case." *State v. Antill* (1964), 176 Ohio St. 61, 64, 26 O.O.2d 366, 197 N.E.2d 548. The majority's approach to discovery and the standard of review applied herein effectively eviscerates the Roes' rights to examine every possible legal argument. This court should recognize the value of the numerous protective orders that Civ.R. 26 provides. Without this recognition, the Roes and other plaintiffs lose legal arguments before they are fully developed. Accordingly, I cannot agree with the narrow construction the

majority now assigns *Biddle v. Warren Gen Hosp.* (1999), 86 Ohio St.3d 395, 715 N.E.2d 518.

{¶ 81} Commensurate with the objection to discovery, the Roes have the initial burden of establishing relevance of the records sought. Relevance should be approached with flexibility, favoring discovery. The trial court correctly started with the premise that the suspected child-abuse reports and medical records need not necessarily be admissible at trial to permit examination during the discovery process. This is clearly not a situation in which the Roes are making a request for totally irrelevant records. Even a tangential relationship between the Roes' claims and information sought that may lead to admissible evidence satisfies the relevance requirement.

{¶ 82} A trial court enjoys broad discretion in the regulation of discovery. *Whitt v. ERB Lumber*, 156 Ohio App.3d 518, 2004-Ohio-1302, 806 N.E.2d 1034. The standard of review in discovery matters is normally abuse of discretion. While the management of discovery is reviewed under an abuse-of-discretion standard, questions of the existence of a privilege are questions of law and are reviewed de novo. Whether the information sought is confidential and privileged from disclosure is a question of law that is reviewed de novo. This is a correct characterization of the standard of review in deciding a pure question of law. In determining the pure legal question, an appellate court may properly substitute its judgment for that of the trial court. However, in the instant case, the pure legal question has been resolved. In fact, it is undisputed that the third-party/nonparty records are confidential. This case does not turn upon a misconstruction or misapplication of R.C. 2317.02 (privileged communication). Thus, in my view, the appellate court erroneously reviewed the trial court's order by utilizing a de novo review, and this court's very recent decision in *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, is not controlling.

**{¶ 83}** In *Med. Mut. of Ohio,* the issue was whether patients' consents to release their medical records to their insurer waived the physician-patient privilege in the context of a civil fraud action brought by the insurer against the physician. The court correctly applied the de novo standard of review to determine whether the information sought by the insurer was confidential and privileged. *Med. Mut. of Ohio*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13, has no application to the Roes' discovery request, as the issue herein is necessarily not one of confidentiality and privilege, but one of "the propriety of the disclosure."

**{¶ 84}** Given the Roes' right to litigate their claims and the third-party/nonparty interests in confidentiality, the trial court should be charged with weighing competing interests. This weighing of competing interests is a balancing of facts and interests best suited for the trial judge's determination. From a policy perspective, the application of an abuse-of-discretion standard would be consistent with the trial court's widely recognized and accepted discretion to regulate the discovery process. It would also be consistent with the generally recognized proposition that the trial court is most informed and knowledgeable about the unique circumstances of a case and thus is in the best position to evaluate and decide these issues. Accordingly, the trial court should be afforded the proper deference in balancing the competing interests at stake. The trial court could properly conclude that the Roes' right to seek redress and the need to protect children who are victimized by adult sexual predators outweigh confidentiality concerns. The suggestion by the appellate court that there is an erroneous interpretation of law requiring de novo review on this record is simply not true. Weighing countervailing interests is not a legal determination, nor should it be characterized as such. Rather, it is a balancing of facts, which may lead to the conclusion that the privilege is outweighed by other rights, to wit, an injured party's right to redress.

{¶ 85} The majority, in my view, creates new law that will permit appellate courts to substitute their judgment — that is, their own opinions — for what they would have done in managing the discovery process by characterizing this case as one in which the appellate court conducts a de novo review of the discovery order. The "propriety of disclosure" of redacted medical records should be all about a "countervailing interest," pursuant to a proper construction of *Biddle*, 86 Ohio St.3d at 402, 715 N.E.2d 518. *Biddle*'s applicability should not be limited to the defense of a tort of unauthorized disclosure of medical information. Countervailing interests are not different from competing considerations. Curiously, this court has explained the abuse-of-discretion standard as " 'the idea of choice, of an exercise of will, of a determination made between competing considerations.' " *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 482 N.E.2d 1248, quoting *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 473 N.E.2d 264. What we have here is competing considerations, and an abuse-of-discretion standard should apply.

{¶ 86} In *Biddle*, this court acknowledged that there are special situations in which "disclosure is necessary to protect or further a countervailing interest that outweighs the patient's interest in confidentiality." 86 Ohio St.3d 395, 715 N.E.2d 518, paragraph two of the syllabus. I conclude that this is one of those "special situations." In *Biddle*, this court acknowledged, "[W]hen a physician's report 'is made in the manner prescribed by law, he of course has committed no breach of duty toward his patient * * *and no liability could result.' " Id. at 402, quoting *Simonsen v. Swenson* (1920), 104 Neb. 224, 228, 177 N.W. 831. However, the claims set forth by the Roes are simply that liability should result when the opposite occurs — i.e., statutory duties are not fulfilled, and injury results.

{¶ 87} There is absolutely nothing in *Biddle* that suggests, much less holds, that the "propriety of disclosure" should be decided as a matter of law. *Biddle* was the only case that the appellate court relied upon for this proposition, other than *Alcorn v. Franciscan Hosp. Mt. Airy Campus*, Hamilton App. No. C-060061, 2006-Ohio-5896, ¶ 17, which merely cites *Biddle*. Accordingly, any reliance by the appellate court on *Alcorn* and *Biddle*, in my view, is misplaced.

{¶ 88} Although the majority suggests that "courts have interpreted *Biddle* as creating a right to obtain nonparty confidential medical information," the cases cited by the majority do not attribute that construction to *Biddle*: *Fair v. St. Elizabeth Med. Ctr.* (2000), 136 Ohio App.3d 522, 527, 737 N.E.2d 106; *Richards v. Kerlakian*, 162 Ohio App.3d 823, 2005-Ohio-4414, 835 N.E.2d 768, ¶ 5; *Alcorn*, Hamilton App. No. C-060061, 2006-Ohio-5896, ¶ 17; *Cepeda v. Lutheran Hosp.*, Cuyahoga App. No. 90031, 2008-Ohio-2348, ¶ 15.

{¶ 89} Robert Fair, for example, was assaulted in a psychiatric ward by another patient, sustaining serious injuries. *Fair*, 136 Ohio App.3d at 523, 737 N.E.2d 106. Fair and his wife brought claims of negligence and loss of consortium against the hospital *(*"SEMC"). Id. at 524. SEMC's motion for summary judgment was overruled, and the Fairs filed a motion to compel the records of Robert's attacker. The trial court overruled the motion to compel in reliance upon *Johnston v. Miami Valley Hosp.* (1989), 61 Ohio App.3d 81, 85, 572 N.E.2d 169, which refused to create an exception to the doctor-patient privilege to prove the existence of a "special relationship" between the hospital and a patient that caused injury to another patient. SEMC filed a second motion for summary judgment, and in response, the Fairs filed a Civ.R. 56(F) motion, stating that they could not oppose SEMC's motion because they lacked sufficient discovery. *Fair*, 136 Ohio App.3d at 524. Following a hearing, the trial court overruled the Fairs' motion, based upon *Johnston*, determining that the alleged

attacker's name and records were privileged information unless waived by the patient, and it granted SEMC's motion for summary judgment.  Id. at 524-525.

{¶ 90} On its own motion, the trial court then vacated its decision to "properly frame the privilege issues for appeal."  Id. at 525.  The trial court then filed its decision granting SEMC's motion for summary judgment, reiterating that the information sought was deemed not discoverable.  Id.

{¶ 91} On appeal, the Fairs relied upon *Biddle,* arguing that an appropriate circumstance existed "in which confidentiality must yield to the public interests." *Fair,* 136 Ohio App.3d at 526, 737 N.E.2d 106.  The Fairs claimed that "their right to redress for Robert's injuries should prevail over the confidentiality interests of the unidentified patient."  Id.

{¶ 92} The Second District noted, "[T]o the extent that the Ohio Supreme Court has carved out an exception to the physician-patient privilege in certain cases, *Johnston, supra,* has been overruled," and it determined that the facts of the Fairs' case fell "within the exception articulated in *Biddle.*"  *Fair*, 136 Ohio App.3d at 526, 737 N.E.2d 106.  The court reached this holding because "SEMC had a duty to reasonably protect Robert from assault or battery by third persons, including other patients," pursuant to R.C. 5122.29.  Id. at 527.  The court further determined that the Fairs' right of recourse for SEMC's alleged breach of duty amounted to a "special situation where disclosure must be made to protect Robert's rights."  Id.  Since SEMC's position was that no offense of violence occurred, it would be "inherently unfair" to limit the Fairs to SEMC's determination, without access to the attacker's medical records.  Id.  In other words, disclosure was necessary to protect Robert's rights.  Finally, all identifying information was to be redacted from the records to protect the alleged attacker's identity.  Id.

{¶ 93} In *Richards,* a doctor and his practice group appealed the trial court's order granting discovery of approximately 30 redacted operative reports

28

involving surgeries performed by the doctor in the context of a wrongful-death action. *Richards,* 162 Ohio App.3d 823, 2005-Ohio-4414, 835 N.E.2d 768, ¶ 1. The trial court's order required that all identifying information be redacted and that the information not be shared with nonwitnesses or filed with the court. It further ordered the copies returned at the end of the litigation.

**{¶ 94}** In his appeal, the doctor relied upon R.C. 2317.02, which provides the testimonial privilege of patient and physician communications. The First District Court of Appeals noted that the operative reports were protected by the statute, but it further noted that "the privilege afforded under R.C. 2317.02 is not absolute. The Ohio Supreme Court has held that the discovery of such protected communications may be appropriate under certain circumstances, such as to further a countervailing interest that outweighs the nonparty patient's interest in confidentiality." *Richards,* 162 Ohio App.3d 823, 2005-Ohio-4414, 835 N.E.2d 768, ¶ 5.

**{¶ 95}** Regarding the plaintiffs' primary claim of negligent credentialing, the First District noted, "It is difficult to imagine how else the negligent-credentialing claim could have been investigated without the disputed documents." Id. at ¶ 6. Further, the plaintiffs intended to impeach the doctor's deposition testimony with the documents. It was significant to the First District that the plaintiffs presented their impeachment argument with specificity. Id.

**{¶ 96}** The First District distinguished the authority upon which the doctor relied, *Wozniak v. Kombrink* (Feb. 13, 1991), 1st Dist. No. C-89053, 1991 WL 17213. In that case, the plaintiff sought nonparty medical records to impeach the testimony of an expert witness. In reversing the judgment of the trial court, the First District determined that the risk of disclosing the patient's identity outweighed the benefit to the plaintiff in impeaching the expert, since the plaintiff had "less intrusive means to obtain the same information." 162 Ohio App.3d 823, 2005-Ohio-4414, 835 N.E.2d 768, at ¶ 7. In contrast, Richards sought to impeach

a party and to develop a primary claim. The First District noted that the trial court protected the identity of the nonparty patients and *"specifically weighed the risk of disclosure of this information otherwise protected by R.C. 2317.02 against the plaintiff's compelling need for the information."* (Emphasis added). Id. at ¶ 8.

**{¶ 97}** In *Alcorn*, Teri Alcorn was allegedly sexually assaulted by another patient in the psychiatric ward of the hospital where she had been admitted due to bipolar disorder. *Alcorn,* 2006-Ohio-5896, ¶ 3. Gerald Alcorn asserted a claim of loss of consortium, and the Alcorns sought the medical records of the alleged attacker, whom they knew. Id. at ¶ 3-4. The Alcorns argued that "their interests in prosecuting their claims outweighed Franciscan's interest in preserving the physician-patient privilege." Id. at ¶ 5. After an in camera review, the trial court granted the Alcorns' motion to compel. Id. at ¶ 5 -6.

**{¶ 98}** On the hospital's appeal, the Alcorns relied upon *Biddle*'s "common-law exception to the privilege." Id. at ¶ 8. The First District quoted *Biddle's* holding that a hospital may disclose otherwise privileged records where " 'disclosure is necessary to protect or further a countervailing interest that outweighs the patient's interest in confidentiality.' " Id. at ¶ 9. The First District next noted that "[t]he propriety of disclosure is a question of law," subject to de novo review. Id. The only authority for this proposition of law as noted above was *Biddle,* which does not hold that the propriety of disclosure is a question of law.

**{¶ 99}** In reliance upon *Fair,* the First District determined that "[a]bsent the medical records of the patient, the Alcorns would * * * have been prevented from proving that [the hospital] was aware of the patient's dangerous proclivities and therefore prevented from establishing a breach of duty on the part of the hospital." Id. at ¶ 11. The court noted that the trial court took every practical measure to ensure that the records would not be disclosed beyond the requirements for discovery. Id. at ¶ 13.

{¶ 100} The hospital also argued that the scope of discovery was too broad. Again, the First District noted that while "the initial question of privilege was a matter of law, the management of the discovery process was solely within the discretion of the trial court." Id. at ¶15. Notably, no abuse of discretion was found in the granting of the trial court's discovery order. Id. at ¶ 17.

{¶ 101} In *Cepeda*, 2008-Ohio-2348, the patient filed a multi-count complaint against, inter alia, a doctor and his practice, after the doctor allegedly inappropriately and unnecessarily removed her uterus and ovaries. Id. at ¶ 2. The trial court granted the Cepedas' motion to compel the discovery of billing statements of nonparty patients sent to Medicare and Medicaid and information regarding the doctor's finances and income. Id. at ¶ 3-4. Defendants appealed, arguing that the billing records were protected by patient privilege and that the financial information sought was unnecessary for the Cepedas to pursue their claims. Id. at ¶ 7.

{¶ 102} The Eighth District Court of Appeals began by noting that the review of the management of the discovery process is subject to an abuse-of-discretion standard, while questions of privilege are subject to de novo review. *Cepeda*, 2008-Ohio-2348, at ¶ 9. Relying on *Biddle,* the court noted that the privilege provided by R.C. 2317.02 is "not absolute," noting that "disclosure is permitted in the absence of prior authorization of privileged matters where disclosure is made pursuant to a statutory mandate or common-law duty." Id. at ¶ 10. Second, "discovery of such protected communications is appropriate to protect or further a countervailing interest that outweighs the non-party patient's interest in confidentiality." Id. It was significant to the appellate court that "[s]hielding the identity preserves the objective of the patient-physician privilege while still achieving the public's interest in justice." Id. at ¶ 11.

{¶ 103} Analogizing *Cepeda* to *Richards,* the court noted that the Cepedas sought defendants' billing statements to establish the doctor's alleged

motive to supplement his income by performing unnecessary procedures on patients with Medicare or Medicaid. *Cepeda*, 2008-Ohio-2348, at ¶ 16. The court determined that "such information is *necessary* to further a countervailing interest that outweighs the non-parties' privilege." (Emphasis added.) Id. Finally, the court noted that the trial court provided protection against the disclosure of the identity of the nonparty patients and limited dissemination of the discovered material. Id. at ¶ 17.

{¶ 104} In addition, the Eighth District disagreed that the questions regarding the doctor's finances were irrelevant and an invasion of privacy. The court reiterated, "[W]e review the trial court's decisions on the management of discovery matters under an abuse of discretion standard. * * * The complaining party must establish a clear and prejudicial abuse of discretion that materially prejudices the party. * * * Absent an abuse of discretion, an appellate court may not overturn the trial court's ruling on discovery matters." *Cepeda*, 2008-Ohio-2348, at ¶ 23-24. The court concluded that the "relevancy test pursuant to Civ.R. 26(B)(1) 'is much broader than the test to be utilized at trial. [Evidence] is only irrelevant by the discovery test when the information sought will not reasonably lead to the discovery of admissible evidence.' " *Cepeda*, 2008-Ohio-2348, at ¶ 29, quoting *Tschantz v. Ferguson* (1994), 97 Ohio App.3d 693, 715, 647 N.E.2d 507.

{¶ 105} The dissenting opinion in *Cepeda* asserted that *Richards* and *Fair* "seek to broaden *Biddle's* holding to apply in *any* case where disclosure is sought to aid a private lawsuit against a doctor who has been accused of malpractice." (Emphasis added.) *Cepeda*, 2008-Ohio-2348, at ¶ 31 (Blackmon, J., dissenting). The dissent notes that *Biddle* used the "balancing of 'countervailing interest' test to determine whether a patient's medical records can be disclosed to third party." Id. at ¶ 32. The dissent argued that "before a trial court may apply [*Biddle's*] balancing test, the trial court and this court must

define specially what the plaintiff-patient's interest is." Id. According to the dissent, "the Majority Opinion has joined the more relaxed understanding of *Biddle* and found *a judicially created right* of injured patients to obtain non-party patients' privileged confidential medical information to punish a wrong inflicted by the patient's doctor." (Emphasis added.) Id. at ¶ 34 (Blackmon, J., dissenting). The dissenting judge prefers "remedies * * * which would not destroy the nonparty patients' privacy" over what was characterized as the "super attorney general" concept espoused by the majority in *Richards* and *Fair*. Id.

{¶ 106} Perhaps it is the language of the dissent in *Cepeda* that leads the majority to conclude that *Biddle* has been interpreted by appellate courts as creating a right to privileged information, but a close reading of these cases reveals that the trial courts conducted a proper weighing of countervailing interests and did not find an absolute right to confidential records. These courts merely recognized the narrow exception for special circumstances, as should be permitted under *Biddle*.

{¶ 107} The majority herein overlooks the fact that redacting the documents to remove all patient-identifying information (only of those who are children, as is Jane) preserves the purpose of the privilege. The privilege should terminate where the public peril begins, whether uncovered by an individual plaintiff, class of plaintiff, prosecuting attorney, or attorney general. The privilege should not be absolute and should yield to the reporting requirements of the child-abuse-reporting statutes. The privilege should be construed narrowly because it is in derogation of the search for truth.

{¶ 108} The majority also mistakenly relies on *Jackson v. Greger,* 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487 (rejecting the three-part test for implied waiver of attorney-client privilege articulated in *Hearn v. Rhay* (E.D.Wash.1975), 68 F.R.D. 574), to reverse the trial court's order requiring Planned Parenthood to produce the redacted medical records. The majority does

so in a conclusory statement suggesting that any exceptions to the physician-patient privilege are for the General Assembly to address. This statement ignores that what the Roes seek is not an exception to physician-patient privilege, but redacted records that violate no privilege. Once any personal information identifying the patients is redacted from the records, the requested discovery will not invade the physician-patient privilege. *Jackson*, a case involving the attorney-client privilege, does not implicate the production of medical records under the protective order in this case.

{¶ 109} In *Jackson*, a client sued her criminal-defense attorney for legal malpractice after a court concluded that the client's guilty plea to the criminal charge precluded, based on collateral estoppel, her claim under Section 1983, Title 42, U.S.Code against the city and officers who arrested her. Id., 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, ¶ 4. During discovery in the malpractice suit, the attorney sought all attorney-client privileged information from the Section 1983 action. Id. The trial court granted the attorney's motion to compel, and the appellate court reversed, applying the *Hearn* test and determining that the client had not impliedly waived privilege. Id. at ¶ 5. On appeal, this court affirmed, holding that R.C. 2317.02 was the exclusive means by which the client's conduct could waive the attorney-client privilege. Id. at paragraph one of the syllabus.

{¶ 110} *Jackson* did not cite or address, much less question, the validity of the previous holding in *Biddle* that special situations may occur in which the interests of a patient, physician, third party, or the public may outweigh the patient's privilege in protecting his or her medical records. In fact, recently, this court analyzed and favorably applied *Biddle* in *Hageman v. Southwest Gen. Health Ctr.*, 119 Ohio St.3d 185, 2008-Ohio-3343, 893 N.E.2d 153, ¶ 13. Thus, as demonstrated by *Hageman, Jackson*'s conclusion that judicially created exceptions to statutory privileges are disfavored should not affect the holding in

*Biddle*. Indeed, *Jackson* did not suggest that this court would no longer recognize public-policy exceptions designed to protect other countervailing interests.

{¶ 111} Further, *Jackson* is distinguishable from *Biddle* and its progeny in that Jackson dealt with the manner in which the holder of the privilege could waive the privilege through his or her own conduct. *Biddle* and its progeny have not hinged on whether the conduct of nonparty patients waived privilege; rather, these cases weighed the competing interests at stake to determine whether the privileged information should be disclosed.

{¶ 112} Although the majority concludes that a narrow construction of *Biddle* compels nondisclosure, I disagree. The privilege asserted by Planned Parenthood is in derogation of the common law, which must be strictly construed against it. The Roes have set forth claims that constitute special circumstances necessitating disclosure. The third-party/nonparty's privacy rights are not invaded or imperiled with the proper redactions. Redactions can be achieved using the proper HIPAA (Health Insurance Portability and Accountability Act) standards to ensure patient confidentiality. The trial court ordered and can continue to take every reasonable and practical measure to ensure that the patients' records will not be disclosed beyond the requirement of discovery. An additional safeguard is the sealing of the records and a confidentiality order imposed upon the parties.

{¶ 113} Lost in all this debate is the fact that the confidentiality of patient records is for the protection of the patient, not the physician. (And in this case, we are talking exclusively about children, those under the age of 18 who may be the victims of sexual exploitation.) The defendants should not be permitted to frustrate a civil suit questioning their professional conduct (or lack thereof) by asserting the physician-patient privilege.

{¶ 114} On this record, both a private and public interest justified compelling discovery. The Roes, as parents of Jane, a 14-year-old child, have the

right to pursue multiple claims for injury and breach of multiple statutory duties. An individual plaintiff or plaintiffs should be permitted the opportunity to discover records that may demonstrate a pattern of ignoring and/or turning a blind eye to child abuse. Such redacted records may indeed bear a direct relation to the issue of whether Planned Parenthood's conduct was reprehensible, thus warranting punitive damages. Should the Roes' lawsuit reveal or expose such a pattern, the public derives a benefit simultaneously by learning of, and demanding accountability for, medical providers who fail to protect vulnerable children from sexual predators.

{¶ 115} The appellate court expressed concern that this case may present a situation wherein a jury may decide to punish Planned Parenthood for harm caused to nonparties. See *Philip Morris USA v. Williams* (2007), 549 U.S. 346, 127 S.Ct. 1057, 166 L.Ed.2d 940. This concern clearly places the cart before the horse. We are now addressing only discovery, not admissibility.

{¶ 116} Nevertheless, harm to nonparties may be considered by jurors for the limited purpose of helping them decide whether Planned Parenthood showed a conscious disregard for the rights and safety of other persons that had a great probability of causing substantial harm. The majority in *Philip Morris* recognized that "[e]vidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk * * * to the general public, and so was particularly reprehensible * * *." *Philip Morris*, 549 U.S. at 355, 127 S.Ct. 1057, 166 L.Ed.2d 940. A recognized and principal goal of punitive damages is to deter future reprehensible conduct.

{¶ 117} This difference was not overlooked by Justice Stevens, who expressed befuddlement at the distinction drawn by the majority in *Philip Morris* between punishing a defendant based on harm to nonparties (not allowed) and considering the scope of wrongdoing in determining the reprehensibility. *Philip Morris*, 549 U.S. at 359, 127 S.Ct. 1057, 166 L.Ed.2d 940 (Stevens, J.,

dissenting). Repeated breaches of the duty to report (or a complete failure to report sexual abuse) under R.C. 2151.421 would be admissible under Ohio Evid.R. 404(B) to demonstrate "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This is a simple recognition that "conduct that risks harm to many is likely more reprehensible than conduct that risks harm to only a few." Id. at 357.

{¶ 118} The majority also concludes that punitive damages are not recoverable under former R.C. 2151.421. In doing so, the majority suggests that *Campbell v. Burton* (2001), 92 Ohio St.3d 336, 750 N.E.2d 539, did not discuss damages, just liability, and that R.C. 2744.02 and 2744.03, 149 Ohio Laws, Part II, 3500, 3508, 3510, effective April 9, 2003, limit the court's expansive interpretation of the word "liability" to civil liability only when expressly imposed by a section of the Revised Code. The obvious difficulty with this conclusion, in my view, is that these revisions of R.C. 2744.02 and 2744.03 address the liability of a political subdivision for injury or death. This case has clearly not been brought against a political subdivision. All defendants are either private individuals or a private corporation, Planned Parenthood.

{¶ 119} Additionally, the majority concludes that because there was no common-law duty to report child abuse, the statute that created the duty, having not explicitly authorized damages for its breach, cannot allow for punitive damages. I believe that first, this conclusion completely overlooks the legislative intent in creating the statute and its amendments, to wit: the protection of vulnerable, victimized women and children. The legislative intent is clearly to prevent further injury, crime, and exploitation.

{¶ 120} The majority opinion overlooks basic principles and characteristics of tort law. It is a basic principle of torts that "liability is based upon the relation of persons with others." Prosser & Keeton, Law of Torts (5th Ed.1984) 5. "Torts consists of the breach of duties fixed and imposed upon the

parties by the law itself." Id. "The tort-feasor usually is held liable for acting * * * in a way that departs from a reasonable standard of care." Id. at 6. "[T]he law of torts is concerned * * * with acts which are unreasonable, or socially harmful, from the point of view of the community as a whole." Id. at 7. The Roes assert a violation of duty owed to them and their minor child, Jane, and the duty arises by both operation of law and the defendant's relationship to Jane.

{¶ 121} Planned Parenthood argues, and the majority holds, that there is no right to punitive damages under R.C. 2151.421 because punitive damages were not expressly provided for in R.C. 2151.99, and the amended sections are unconstitutional. Yet whoever violates R.C. 2151.421(A) is guilty of a misdemeanor of the fourth degree. When the claimed wrong partakes of a criminal nature, the wrongdoer should be brought to justice in a civil suit. Punitive damages do not rest on some abstract concept of justice, but upon sound public policy, which in this instance seeks to promote the safety and health of children and encourage reporting of abuse. We must take into account the importance of the underlying public policy jeopardized by a mandatory reporter's failure to report. As Justice Stevens noted in his dissent in *Philip Morris*, "There is little difference between the justification for a criminal sanction, such as a fine or a term of imprisonment, and an award of punitive damages." Id. at 359, 127 S.Ct. 1057, 166 L.Ed.2d 940 (Stevens, J., dissenting).

{¶ 122} It cannot be overlooked that the Roes have also alleged malice and wanton disregard for their rights and those of their minor child, Jane. In cases in which malice is shown, the right to punitive damages is a rule so deeply rooted in Ohio law that this court should not be permitted to carve out an exception thereto governing claims brought under former R.C. 2151.421. Punitive damages have always been two sides of the same coin, one of which is punitive, criminal, and public, and the other, which is in substance private and civil. Criminal statutes should serve as guideposts for the imposition of civil tort duties.

**{¶ 123}** Further, sections R.C. 2151.421(G) and the former (H) support a finding that a civil remedy for punitive damages is available. These sections, by recognizing a civil immunity for "whistleblowers" — i.e., reporters under the statute — do by implication recognize a right to civil redress, including punitive damages against those mandatory reporters who fail to report known or suspected abuse. This reading of the statute recognizes that each section should be construed in connection with every other part or section to promote a harmonious whole. The ultimate inquiry is to ascertain the legislative intent. Here, that intent is to encourage reporting, provide civil immunity for those who make a false report in good faith, and also hold liable those who fail in their duty to protect children such as Jane who are victims of sexual predators. In my view, this intent was clear even before H.B. 280. We should presume that the General Assembly did not intend the absurd results from the operation of the statute reached by the majority, which in effect shields nonreporters.

**{¶ 124}** Jane is certainly a member of the class that the statute is designed to protect. The underlying purpose of the statute is to afford her the full panoply of civil damages when a breach is established. A medical provider, regardless of the area in which the individual physician specializes, obviously has a fiduciary relationship with his or her patient warranting compliance with the standard of care required of all physicians in the medical community at large. Although the majority concludes that there was no common-law duty to report child abuse, there has *always* been a common-law duty to report serious crime. Child abuse, sexual battery, and rape are serious crimes.

**{¶ 125}** The majority opinion rendered today does more to protect the adult defendants (i.e., Planned Parenthood) than sexually abused children. The opinion likewise undermines parents' rights to protect their minor children and to guide their medical treatment. The trial court properly exercised its discretion and granted discovery to the Roes so that they might pursue their claims. Mandatory

reporting must be encouraged, expected, and demanded. The Roes should not be effectively denied the opportunity to seek remedies the law affords them. R.C. 1.47(C) provides: "In enacting a statute, it is presumed that: * * * A just and reasonable result is intended." The result today is neither just nor reasonable.

_____

Crabbe, Brown & James, L.L.P., Brian E. Hurley, and Robert J. Gehring; Keating, Muething & Klekamp, P.L.L., Richard L. Creighton Jr., William A. Posey, and Charles M. Miller; and White, Getgey & Meyer Co., L.P.A., and Nicholas E. Bunch, for appellants.

Vorys, Sater, Seymour & Pease, L.L.P., Daniel J. Buckley, Michael R. Thomas, John J. Kulewicz, Suzanne K. Richards, Dorothea K. Langsam, Maureen P. Tracey, Jacob D. Mahle, Alexandra T. Shimmer, and Barbara Bison Jacobson, for appellees.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and William E. Breyer, Chief Assistant Prosecuting Attorney; Rachel A. Hutzel, Warren County Prosecuting Attorney; and Donald W. White, Clermont County Prosecuting Attorney, urging reversal for amici curiae Joseph T. Deters, Hamilton County Prosecuting Attorney, Rachel A. Hutzel, Warren County Prosecuting Attorney, and Donald W. White, Clermont County Prosecuting Attorney.

Kirkpatrick Law Offices P.C., and Joel J. Kirkpatrick; and Mailee K. Smith, urging reversal for amici curiae members of the U.S. Congress from the State of Ohio.

Langdon Law L.L.C., and David R. Langdon; and Alliance Defense Fund and Jeffrey A. Shafer, urging reversal for amici curiae Dr. and Mrs. Jack Willke, Center for Bioethical Reform, Center for Bioethics at Cedarville University, Citizens for Community Values, Citizens Media Group, Cleveland Lawyers for Life, Cleveland Right to Life, Columbus Right to Life, Dayton Right to Life, Family First, Healthy Beginnings, Institute for Principled Policy, Life Issues

Institute, Mission: American, NE Ohio Values Voters, Ohio Christian Alliance, Ohio Governmental Prayer Alliance, Ohio Right to Life, Pregnancy Center East, Pregnancy Center West, Right to Life of Butler County, Right to Life of Greater Cincinnati, Sanctity of Life Foundation, The Reach Out Pregnancy Center, Touch the World Ministries, Warren Co. Right to Life, The Way of Love, and Women Influencing the Nation.

Bricker & Eckler, L.L.P., Anne Marie Sferra, and Bridget Purdue, urging affirmance for amici curiae the Ohio State Medical Association, the American Medical Association, and the American College of Obstetricians and Gynecologists.

Katz, Teller, Brant & Hild L.P.A. and Laura A. Hinegardner, urging affirmance for amicus curiae the Ohio Psychological Association.

Collis, Smiles & Collis, L.L.C., Terri-Lynne B. Smiles, and Elizabeth Y. Collis, urging affirmance for amicus curiae the Ohio Psychiatric Physicians Association.

American Civil Liberties Union of Ohio Foundation, Inc., Carrie L. Davis, and Jeffrey M. Gamso, urging affirmance for amici curiae Ohio Chapter of the American Academy of Pediatrics, Ohio Academy of Family Physicians, Society for Adolescent Medicine, National Association of Social Workers, National Center for Youth Law, Center for Adolescent Health & The Law, Ohio Now Education and Legal Fund, Ohio Domestic Violence Network, Action Ohio Domestic Violence, Break The Cycle, and Weave, Inc.

_____