FAIR et al., Appellants,

v.

ST. ELIZABETH MEDICAL CENTER, Appellee.

[Cite as *Fair v. St. Elizabeth Med. Ctr.* (2000), 136 Ohio App.3d 522.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 17942.

Decided Jan. 14, 2000.

*David M. Deutsch,* for appellants.

*Gregory C. Gibson,* for appellee.

FREDERICK N. YOUNG, Judge.

Plaintiffs–appellants Robert Fair and his wife, Ruth, appeal the decision of the trial court granting defendant–appellee St. Elizabeth Medical Center's (SEMC's) motion for summary judgment.

The Fairs filed a complaint and jury demand on July 12, 1994, against SEMC for failing to protect Robert from being assaulted in the psychiatric ward on July 15, 1993. On July 8, 1993, Robert was admitted for care and treatment of a mental disorder that resulted from a head injury sustained when he was attacked at a local restaurant. On July 15, 1993, Robert, who was supposed to be under twenty-four hour surveillance, walked unattended into a community restroom in the ward. While in the restroom, Robert was allegedly pushed to the floor by another male psychiatric patient. Robert was found lying on the bathroom floor, bleeding from a laceration to his forehead. The alleged attacker was another psychiatric patient, who has remained unidentified. The next day, on July 16, 1993, Robert walked into the hallway and encountered the same unidentified male. This patient allegedly struck Robert on the chest and again knocked him to the floor.

Robert claims that as a result of the altercations, he suffered various abrasions and contusions and a fracture to his lumbar spine, which led to severe internal injuries including a colostomy, a Paralytic Ileus, and a severe worsening of his psychiatric condition to the point that Robert is totally dependent on others for everyday necessities. SEMC had conducted an internal investigation of the incidents, and determined that no offense of violence had occurred, and that Robert's injuries were not the result of the alleged altercations.

The complaint asserted causes of action against SEMC for negligence and loss of consortium. The complaint was voluntarily dismissed without prejudice by the Fairs on March 6, 1995. The Fairs refiled the complaint on June 30, 1995.

SEMC filed a motion for summary judgment on January 16, 1996. The Fairs responded on March 13, 1996. Accompanying their response was an affidavit, signed by Donald Adams, M.D., which stated that upon reviewing medical records pertaining to the care and treatment of Robert at SEMC, it was his professional opinion that SEMC had deviated from accepted standards of hospital practice by failing to protect Robert from the assault. On March 26, 1996, the trial court overruled SEMC's motion, finding that a genuine issue of material fact had existed based on the affidavit.

On July 3, 1996, the Fairs filed a motion to compel portions of the medical records of the alleged attacker, with all identifying information redacted. SEMC filed a memorandum contra to the Fairs' motion to compel on July 18, 1996, asserting that the information requested by the Fairs was protected under the physician-patient privilege and, absent a waiver, the documents requested were not discoverable. The trial court overruled the motion to compel on August 16, 1996, relying upon *Johnston v. Miami Valley Hosp.* (1989), 61 Ohio App.3d 81, 572 N.E.2d 169, in which this court refused to carve out an exception to the physician-patient privilege to prove .the existence of a special relationship between the hospital and the patient who had caused injury to the plaintiff. Thus, a patient's medical records were protected by the physician-patient privilege and a release was required for their discovery. *Id.*

SEMC filed a second motion for summary judgment on December 1, 1997, alleging that no genuine issue of material fact existed because the Fairs had failed to establish a *prima facie* case for medical negligence through the testimony of a medical expert. The Fairs responded by filing a Civ.R. 56(F) motion to deny the motion for summary judgment on January 8, 1998. The Fairs' motion stated that they could not properly oppose SEMC's motion for summary judgment because they were not provided with proper discovery; in particular, SEMC had not provided them with its policy in such circumstances, whether such policy had been followed, the specific facts of the alleged assault, and whether the incident was reported to the police. The Fairs requested that the motion be denied and that a continuance be granted so that they could properly oppose the motion. In opposition to SEMC's motion, the Fairs also filed a "Listing of deficiencies in Defendant's answers to Plaintiff's discovery requests" on February 5, ·1998.

The trial court held a hearing and requested that briefs be submitted on the issue of physician-patient privilege, which the Fairs filed on April 2, 1998, and SEMC responded to on April 20, 1998. On April 8, 1999, the trial court overruled

the Fairs' discovery request with respect to the issue of privileged materials, and it granted SEMC's motion for summary judgment. The trial court found that, based upon *Johnston, supra,* the name of the alleged attacker, along with that individual's hospital records, constituted information protected by the physician-patient privilege unless waived by the patient. Additionally, the trial court found that the attorney-client privilege extended to hospital incident reports; thus, they were not discoverable.

Upon the trial court's own motion, on May 7, 1999, the April 8, 1999 judgment was vacated to permit the trial court to properly frame the privilege issues for appeal. The Fairs filed an affidavit of Dominick Flarey, Ph.D., in further response to SEMC's motion for summary judgment. The affidavit reiterated the alleged facts and Dr. Flarey provided his opinion that it would be impossible for the Fairs to prove that SEMC had breached its duty of care without a review of the alleged attacker's medical records. On August 5, 1999, the trial court filed its decision reiterating that the previous April 8, 1999 decision on the privilege issues remain undisturbed. The trial court granted summary judgment based on the fact that the alleged attacker's name and hospital records, as well as the incident reports, were privileged information, and thus beyond the Fairs' right to discovery. This appeal followed.

## I

"The trial court erred as a matter of law by granting summary judgment after its interpretation of Ohio Revised Code § 2317.02 regarding physician-patient privilege and its interpretation of Ohio Revised Code § 2305.252 regarding incident reports."

The Fairs assert error in the trial court's determination that the alleged attacker's name and medical records were protected by the physician-patient privilege. The Fairs argue that the circumstances surrounding the altercation, in particular, the severity of Robert's injuries, are highly compelling and should create a judicial waiver of the privilege. The Fairs contend that, without reviewing the alleged attacker's medical records, it would be impossible to (1) establish the existence of a special relationship between the alleged attacker and SEMC and (2) determine that SEMC had breached a duty to control the alleged attacker's conduct. Finally, the Fairs claim that the incident report prepared by SEMC was not protected from discovery pursuant to R.C. 2305.252, because Robert's injuries were not the "result of patient care by a health care entity" as protected under the statute.

Conversely, SEMC contends that the identity and medical records of the alleged attacker, in the absence of waiver, is a communication between the

patient and his physician, and thus is protected by the physician-patient privilege under R.C. 2317.02 based upon our decision in *Johnston, supra.*

In their reply, the Fairs argue that this would be an appropriate circumstance under *Biddle v. Warren Gen. Hosp.* (1999), 86 Ohio St.3d 395, 715 N.E.2d 518, in which confidentiality must yield to the public interests. They claim that their right to redress for Robert's injuries should prevail over the confidentiality interests of the unidentified patient.

In 1989, we examined the issue of extending an exception in civil cases to the physician-patient privilege for public policy reasons. *Johnston, supra.* Johnston had argued that public policy dictated that the physician-patient privilege must yield to her interests in prosecuting a claim against Miami Valley Hospital for injuries she sustained from another male patient. Without access to the other patient's medical records, Johnston argued, she could not prove her claim that under the "special relation doctrine," the hospital had a duty to protect her from those patients known at the hospital to have violent propensities. Our response to Johnston was to "look to the legislature" for the relief she sought. We must now revisit our decision in *Johnston, supra,* in light of *Biddle, supra.*

Just recently, the Ohio Supreme Court ruled:

"In the absence of prior authorization, a physician or hospital is privileged to disclose otherwise confidential medical information in those special situations where disclosure is made in accordance with a statutory mandate or common-law duty, or where disclosure is necessary to protect or further a countervailing interest that outweighs the patient's interest in confidentiality." *Biddle, supra,* at paragraph two of the syllabus.

The Supreme Court reasoned in *Biddle* that "the duty of confidentiality 'is not absolute, and its breach is actionable only if it is wrongful, that is to say, without justification or excuse. Although public policy favors the confidentiality described herein, there is a countervailing public interest to which it must yield in appropriate circumstances.' Thus, special situations may exist where the interest of the public, the patient, the physician, or a third person are of sufficient importance to justify the creation of a conditional or qualified privilege to disclose in the absence of any statutory mandate or common-law duty." (Citations omitted.) *Id.* at 402, 715 N.E.2d at 524.

Thus, to the extent that the Ohio Supreme Court has carved out an exception to the physician-patient privilege in certain cases, *Johnston, supra,* has been overruled. For the following reasons, we find that the facts of this case fall within the exception articulated in *Biddle, supra.*

Pursuant to R.C. 5122.29, a hospital has a duty to protect the rights of its mentally ill patients:

"All patients hospitalized or committed pursuant to this chapter have the following rights:

"* * * *

"(B) The right at all times to be treated with consideration and respect for his privacy and dignity, including without limitation, the following:

"* * * *

"(2) A person who is committed, voluntarily or involuntarily, shall be given reasonable protection from assault or battery by any other person."

■ Thus, it is clear from the plain language of the statute that SEMC had a duty to reasonably protect Robert from assault or battery by third persons, including other patients. *Id.* See, also, *Dawson v. St. Elizabeth Hosp. Med. Ctr.* (Oct. 7, 1998), Mahoning App. No. 97 C.A. 53, unreported, 1998 WL 775008.

We must now determine if Robert's right of recourse for SEMC's potential breach of duty would amount to a special situation that would outweigh the alleged attacker's right to confidentiality. Without disclosure of the alleged attacker's medical records, Robert would have to rely solely upon SEMC's own determination that no offense of violence had occurred, that Robert's extensive injuries were not the result of the altercations, and that SEMC did not breach its duty to protect. However, given SEMC's posture in this case, that would be inherently unfair. There is a conflict in motives behind SEMC's argument for nondisclosure, and we cannot determine if SEMC is pursuing the underlying purpose of confidentiality and the physician-patient privilege, or if SEMC is asserting the self-serving purpose of precluding any further investigation and thus protecting the hospital from potential liability. Accordingly, we find that under the new law in *Biddle, supra,* this is a special situation where disclosure must be made to protect Robert's rights.

■ Although we believe that this situation warrants disclosure, we further find that it is necessary to redact the identifying information, including the alleged attacker's name, address, and name of his treating psychiatrist, from the medical records. The purpose of the privilege statute is to "create an atmosphere of confidentiality, encouraging the patient to be completely candid and open with his or her physician, thereby enabling more complete treatment." *In re Miller* (1992), 63 Ohio St.3d 99, 107, 585 N.E.2d 396, 403. A redaction of all identifying information of the patient would preserve the purpose of the privilege, protect the alleged attacker's identity, yet still provide relevant information to the Fairs for them to determine if a cause of action does exist against SEMC. For appellate purposes, we also order the trial court to retain a clean copy of the

medical records under seal, in the event that this remedy is not satisfactory to either party and they choose to pursue an appeal.

Given our determination that the alleged attacker's medical records must be discoverable, it is unnecessary for us to address the Fairs' argument that SEMC's incident report should be discoverable.

Accordingly, the Fairs' first assignment of error is hereby sustained. The trial court's order granting summary judgment is hereby reversed, and the case is remanded for disclosure of the alleged attacker's medical records. Furthermore, the trial court is ordered to redact all identifying information of the alleged attacker, including the name of the treating psychiatrist, and to maintain a clean copy of the records under seal.

## II

"The court erred as a matter of law by granting summary judgment because St. Elizabeth Medical Center had a statutory obligation pursuant to Ohio Revised Code § 2921.22(B) to report any serious physical harm of a patient which indicates an offense of violence to law enforcement authorities."

The Fairs also argue that SEMC had a duty to report the alleged assault to law enforcement authorities pursuant to R.C. 2921.22(B). Thus, it was error for the trial court to adopt SEMC's reasoning that R.C. 2921.22(B) did not apply simply because SEMC had determined that no offense of violence had occurred. The Fairs argue that had this been done, the police report as a public record would have been accessible to them and the Fairs would have had the opportunity to obtain vital evidence to prove their case.

SEMC argues that, upon their own determination, Robert's alleged injuries were not the result of the altercations with the unidentified patient and no offense of violence had occurred that necessitated the involvement of law enforcement officials. SEMC argues that the law presumes the validity of their determination that no offense of violence had occurred.

R.C. 2921.22(B) stated, at the time of the incident, that "no physician, limited practitioner, nurse, or person giving aid to a sick or injured person, shall negligently fail to report to law enforcement authorities * * * any serious physical harm to persons that he knows or has reasonable cause to believe resulted from an offense of violence." 144 Ohio Laws, Part II, 2006, 2009. However, prior to the disclosure of the alleged attacker's medical records, it cannot be determined that the altercation between the alleged attacker and Robert was an offense of violence, and that his extensive injuries resulted therefrom. As such, this assignment of error is not ripe for review, and Robert's second assignment of error is overruled.

The trial court's judgment is reversed, and the cause is remanded in accordance with this decision.

*Judgment reversed*
*and cause remanded.*

BROGAN and GLASSER, JJ., concur.

GEORGE M. GLASSER, J., retired, of the Sixth Appellate District, sitting by assignment.