| | |
|---|---|
| JOHN M. SKORVANEK | Case No. 2014-00845 |
| Plaintiff | Judge Patrick M. McGrath |
| v. | DECISION |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Before the court are objections filed by plaintiff John Skorvanek to a decision issued by a magistrate of this court. The magistrate found that Skorvanek failed to prove by a preponderance of the evidence that defendant Ohio Department of Rehabilitation and Correction (ODRC) was negligent in failing to prevent an attack upon Skorvanek by another inmate, Scott Creech. Because the magistrate has properly determined the factual issues and appropriately applied the law related to Skorvanek's claim of negligence, the court determines that the magistrate's decision and recommendation should be adopted as its own and that judgment should be rendered in favor of ODRC.

**Background**

{¶2} On October 23, 2014, Skorvanek sued ODRC, asserting that on November 12, 2013, at about 7:00 a.m., Creech obtained a container of boiling water, poured it on Skorvanek's face and down his throat, hit Skorvanek with a cane, resulting in burns to Skorvanek's shoulders, neck, back, face, permanent scarring, loss of hearing, and permanent damage to Skorvanek's right ear. (Complaint at ¶ 3.) Skorvanek maintained that agents of ODRC were negligent "in failing to supervise, failing to protect, failing to control, in negligently allowing an inmate [Scott Creech] with a known propensity for violence and/or was observably mentally impaired, to be placed in [a second floor

dormitory that, according to Skorvanek, contained "as many as 100 wheelchair patients"]." (Complaint at ¶ 4.) Skorvanek demanded a sum in excess of $25,000. ODRC answered Skorvanek's complaint, generally denying Skorvanek's claim of negligence.

{¶3} Pursuant to Civ.R. 53, the court appointed Robert Van Schoyck—an attorney admitted to practice in Ohio—as a magistrate in the cause without limitation of authority specified in Civ.R. 53(C). ODRC moved for summary judgment and the court denied the motion. The court bifurcated the matter for trial and set April 18, 2016 as a trial date.

{¶4} On March 28, 2016, the court, through Magistrate Van Schoyck, held a status conference with the parties. In an entry issued after the conference, the court noted that "with the agreement of the parties, another status conference is scheduled for *April 1, 2016, at 10:30 a.m.* in order to discuss a discovery issue involving the psychiatric records of inmate Scott Creech." (Emphasis sic.) (Order of the magistrate dated March 29, 2016.) No party moved to set aside the magistrate's order.

{¶5} Thereafter, on April 1, 2016, the court, through Magistrate Van Schoyck, held another status conference. Following the April 1st conference, the court issued an entry dated April 4, 2016, noting: "As background, this issue originates from a discovery request that plaintiff made for the records some time ago. Defendant objected to the request and did not produce the records. * * * As a result of the April 1, 2016 status conference, the court was informed that, on the basis of privilege, defendant maintains its objection to producing any of the psychiatric records. The court and counsel were in agreement that there should be an in camera review of the records." (Order of the magistrate dated April 4, 2016.) In the entry of April 4, 2016, the magistrate stated:

{¶6} It was agreed as a result of the conference, and is hereby ORDERED:

1) Defendant shall file the psychiatric records of inmate Scott Creech, under seal, on or before *April 11, 2016*, with a copy of this order attached to the envelope. It is hereby ORDERED that the records be

restricted from public access, and that the records shall be maintained separately in the case file, under seal, along with a copy of this order attached.  *See* Sup.R. 45(E);

\* \* \*

3) It is anticipated that the court will reserve ruling on the privilege issue pending the *April 18, 2016* proceedings, and allow the parties the opportunity at trial to present argument and evidence on that issue. Should it be determined ultimately that any portion of the records are not privileged, it is understood that the trial record may be held open for the presentation of additional evidence related to those limited matters.

(Emphasis sic.)  (Order of the magistrate dated April 4, 2016.)  No party moved to set aside the magistrate's order of April 4, 2016.

{¶7} On April 11, 2016, ODRC filed under seal the mental health records of inmate Creech.  In a notice accompanying its filing, ODRC stated: "All non-privileged records within inmate Creech's mental health file have already been extracted and produced to Plaintiff.  The documents contained herein, filed under seal, consist entirely of privileged mental health records and are being produced to permit an in-camera inspection by the Court so that it can be determined whether a privilege would apply to these documents.  The Department objects to counsel for either party being present or participating while the in-camera inspection is being conducted."  ("Notice of Filing Documents *Under Seal*" filed April 11, 2016).  That same day ODRC moved for a protective order "so as to protect the privileged confidential medical and mental health records of inmate Scott Creech (R117262)—a non-party to this case—who battered Plaintiff, former-inmate John Skorvanek (#634-067)."

{¶8} The next day—April 12, 2016—ODRC moved in limine, seeking to exclude certain portions of the deposition transcripts of inmate-witnesses George Borgmann and Donnie Waldroop and reasserting its objections that were made at the time of the taking of the depositions.  Two days later—on April 14, 2016—Skorvanek filed a response in

opposition to ODRC's motion in limine, urging that the "depositions should be read during trial and the court can then properly rule." Skorvanek further maintained in his response that ODRC's "use of a motion in limine is confusing to attack various questions and does not comport with the required means to argue objections to depositions."

{¶9} On April 18, 2016, the matter proceeded to trial to determine the issue of liability related to Skorvanek's complaint. Before opening statements, the court held a discussion with the parties' counsel about how trial should proceed. The court ultimately determined to keep the record "open" following the presentation of evidence, noting: "I think there would be an opportunity, as we had agreed, to keep the record open and put in further evidence then if [Creech's mental health records] are going to come in. If none of them are going to come in, then I think the record would stop with where we're at today and – it seemed like a fair plan." (Tr., 13.) Before Skorvanek rested his case, Magistrate Van Schoyck considered ODRC's motion in limine, issuing rulings pertaining to ODRC's objections to portions of the depositions of inmate-witnesses Borgmann and Waldroop. And at the close of the defense case, the magistrate reviewed the documents that ODRC had filed under seal and issued a ruling based on his in camera inspection of these documents. (Tr., 225-230.) ODRC ultimately withdrew its privilege argument concerning nine documents and the court determined that the rest of the documents were privileged, except an additional document that ODRC had already produced to Skorvanek. (Tr., 229-230.)

{¶10} After trial, on April 29, 2016, the court, through Magistrate Van Schoyck, issued an order that granted in part ODRC's motion in limine, granted in part ODRC's motion for a protective order, and that ordered the filing of post-trial briefs. No party moved to set aside the magistrate's order. On November 16, 2016, Magistrate Van Schoyck issued a decision finding that Skorvanek failed to prove his claims by a

preponderance of the evidence and recommending the issuance of judgment in favor of ODRC.

{¶11} After the court granted Skorvanek's motions for extensions of time to file objections to the magistrate's decision, on January 17, 2017, Skorvanek filed nine objections, as well as an attendant memorandum. Nine days later, on January 26, 2017, ODRC filed a response to Skorvanek's objections, which it labeled "Defendant's Reply to Plaintiff's Objections." ODRC did not timely file any objections to the magistrate's decision of November 16, 2016.

## Law and Analysis

{¶12} Civ.R. 53(D)(3)(b) concerns objections to a magistrate's decision. In accordance with Civ.R. 53(D)(3)(b)(i), a party "may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed." Civ.R. 53(D)(3)(b) does not expressly authorize a party to file a response to a party's objections.

{¶13} However, Civ.R. 53(D)(5) does permit a court to grant an extension of time to file objections, stating: "For good cause shown, the court shall allow a reasonable extension of time for a party to file a motion to set aside a magistrate's order or file objections to a magistrate's decision. 'Good cause' includes, but is not limited to, a failure by the clerk to timely serve the party seeking the extension with the magistrate's order or decision."

{¶14} Civ.R. 53(D)(3)(b)(ii) pertains to the nature of an objection, providing: "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." According to Civ.R. 53(D)(3)(b)(iii), "[a]n objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to

the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available."

{¶15} Civ.R. 53(D)(4) governs a court's action on objections to a magistrate's decision.   Civ.R. 53(D)(4)(d) provides, "If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. * * *."   According to Civ.R. 53(D)(4)(b), whether or not objections are timely filed, a court "may adopt or reject a magistrate's decision in whole or in part, with or without modification."   A magistrate's decision "is not effective unless adopted by the court."  Civ.R. 53(D)(4)(a).

{¶16} In *Siegel v. State*, 2015-Ohio-441, 28 N.E.3d 612, ¶ 12 (10th Dist.), the Tenth District Court of Appeals discussed the standard that applies to this court's review of a magistrate's determination, stating:

> "A magistrate is an arm of the court, not a separate judicial entity with independent judicial authority and duties." *State ex rel. DeWine v. Ashworth*, 4th Dist. No. 11CA16, 2012-Ohio-5632, ¶ 38. The Court of Claims still must "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). The court retains the ultimate authority and responsibility over the magistrate's findings and rulings. *Hartt v. Munobe*, 67 Ohio St.3d 3, 5-6, 1993 Ohio 177, 615 N.E.2d 617 (1993). Appellants' suggestion that a magistrate, whether by individual capacity of the magistrate or by authorization from the court, is incapable of deciding the facts and weighing the credibility of witnesses, lacks merit. In any event, "the court remains the ultimate finder of fact, even on matters of credibility." *DeWine* at ¶ 37. "Although the trial court may appropriately give weight to the magistrate's assessment of witness credibility in view of the magistrate's firsthand exposure to the evidence, the trial court must still independently assess the evidence and reach its own conclusions." *Sweeney v. Sweeney*, 10th Dist. No. 06AP-251, 2006-Ohio-6988, ¶ 15, citing *DeSantis v. Soller*, 70 Ohio App.3d 226, 233, 590 N.E.2d 886 (10th Dist.1990).

{¶17} The court determines that Skorvanek's objections were filed in accordance with this court's orders granting him extensions of time to file objections and the court further determines that Skorvanek's objections are timely filed. In accordance with Civ.R. 53(D)(4)(d), the court therefore shall undertake an independent review as to the objected matters to determine whether Magistrate Van Schoyck has properly determined the factual issues and appropriately applied the law. The court also determines that ODRC's response is not expressly permitted by Civ.R. 53(D)(3)(b); however, because Skorvanek has not objected to ODRC's filing, the court accepts ODRC's response.

{¶18} Skorvanek presents the following objections for this court's determination:

**Objection No. 1: "The Magistrate erred in failing to Provide Plaintiff with Scott Creech's mental health records, including all records pertaining to matters not relating to treatment."**

**Objection No. 2: "The Magistrate erred in failing to consider Scott Creech had a metal cane which required a restriction which was not produced by Defendant."**

**Objection No. 3: "The Magistrate erred in failing to consider Scott Creech's prison record of assaults, misconduct, and bizarre behavior, as constructive notice that Creech would attack another inmate."**

**Objection No. 4: "The Magistrate erred when he failed to consider Defendant's total lack of security in the medical bay where Plaintiff was housed as negligence in not protecting the safety of disabled inmates of varying security level, up to level 3."**

**Objection No. 5: "The Magistrate erred in failing to consider C.O. Long had to make rounds in three separate bays and was the only officer providing security for 160 inmates preventing any ability to prevent assaults and protect inmates' safety."**

**Objection No. 6**: "The Magistrate erred by failing to provide counsel with all of Scott Creech's mental health records or allowing him to participate in an inspection of these records, particularly when defense counsel, who are not staff of the Department of Rehabilitation and Correction, were allowed access."

**Objection No. 7**: "The Magistrate erred in permitting a witness to give an opinion the sealed records were all privileged."

**Objection No. 8**: "The Magistrate erred when he considered and ruled on objections not made during the taking of the deposition and which were not provided to plaintiff's counsel sooner than seven days before trial."

**Objection No. 9**: "The Magistrate's ruling was against the manifest weight of the evidence and contrary to law."

Because some of Skorvanek's objections are related, for ease of analysis the court shall examine some objections together.

{¶19} In support of his objections, Skorvanek relies in part on *Frash v. Ohio Dept. of Rehab. & Corr.*, 2016-Ohio-360, 59 N.E.3d 566 (10th Dist.) (*Frash I*), *application for en banc consideration denied*, 10th Dist. Franklin No. 14AP-932, 2016-Ohio-3134 (*Frash II*), *discretionary review denied*, 147 Ohio St.3d 1413, 2016-Ohio-7455, 62 N.E.3d 185. Notably, however, since the Tenth District Court of Appeals issued *Frash I* and *Frash II*, it issued *Literal v. Dept. of Rehab .& Corr.*, 10th Dist. Franklin No. 16AP-242, 2016-Ohio-8536. In *Literal*, the appellate court discussed *Frash I* and *II* and examined the "law of this district with regard to DRC liability for an assault by one inmate on another * * *." *See Literal*, at ¶ 16-20, 27-30. For purposes of this review, the court therefore will look not only to *Frash I* and *Frash II* for guidance, but it also will look to *Literal*—a more recent pronouncement from the Tenth District Court of Appeals—as well as other law.

{¶20} In *Literal*, the Tenth District Court of Appeals reiterated the legal standard as to ODRC's liability for an assault by one inmate on another inmate, stating:

The law is well-settled in Ohio that ODRC is not liable for the intentional attack of one inmate by another, unless ODRC has adequate notice of an impending assault. *Mitchell v. Ohio Dept. of Rehab. & Corr.*, 107 Ohio App.3d 231, 235, 668 N.E.2d 538 (10th Dist.1995), citing *Baker v. State, Dept. of Rehab. & Corr.*, 28 Ohio App.3d 99, 28 Ohio B. 142, 502 N.E.2d 261 (10th Dist.1986). Notice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained. *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-1052, 2010 Ohio 4736, ¶ 14. Actual notice exists where the information was personally communicated to or received by the party. *Id.* "Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Id.*, citing *In Re Estate of Fahle*, 90 Ohio App. 195, 197, 105 N.E.2d 429 (6th Dist.1950).

*Id.* at ¶ 9. *See also* [*Allen v. Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-619, 2015-Ohio-383 ] at ¶ 18.

*Literal* at ¶ 16, quoting *Watson v. Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-606, 2012-Ohio-1017, at ¶ 9. The legal standard, as stated in *Literal*, applies to Skorvanek's claim of negligence in this case, as Skorvanek's negligence claim concerns the intentional attack of an inmate upon Skorvanek when Skorvanek himself was incarcerated. And because Skorvanek is the party asserting a claim of negligence, he has the burden of proving his claim. *See McFadden v. Elmer C. Breuer Transp. Co.*, 156 Ohio St. 430, 433, 103 N.E.2d 385 (1952) (stating that it is elementary that a person "who asserts an issue has the burden of proving it"). Also Skorvanek is required to prove his negligence claim by a preponderance of the evidence. *See Watson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-606, 2012-Ohio-1017, ¶ 7 ("As the plaintiff, Watson had the burden to prove each element of his negligence claim by a preponderance of the evidence"); *see also Weishaar v. Strimbu*, 76 Ohio App.3d 276, 282-283, 601 N.E.2d 587 (8th Dist.1991).

**A. Objections Nos. 1 and 6**

{¶21} In his first objection, Skorvanek states: "The Magistrate erred in failing to Provide Plaintiff with Scott Creech's mental health records, including all records pertaining to matters not relating to treatment." And in his sixth objection, Skorvanek maintains: "The Magistrate erred by failing to provide counsel with all of Scott Creech's mental health records or allowing him to participate in an inspection of these records, particularly when defense counsel, who are not staff of the Department of Rehabilitation and Correction, were allowed access."

{¶22} In support of these contentions, Skorvanek relies on various authority:

- *Frash I* and *II*,

- Civ.R. 34(C),

- rulings by a former judge and former magistrate of this court in unrelated cases—*Michael R. McGuire v Ohio Dept. of Rehab. & Corr.*, Ct. of Claims No. 93-04401 (Mar. 30, 1995) (judge's ruling on defense motion to quash subpoena duces tecum) and *Charlie Hughes v. Ohio Dept. of Rehab. & Corr.*, Ct. of Claims No. 2007-03331 (Dec. 28, 2007) (magistrate's ruling on plaintiff's motion to compel),

- R.C. 2317.02(A)(2)(b) (privileged communications),

- *State v. Farthing*, 146 Ohio App.3d 720, 767 N.E.2d 1242 (2nd Dist.2001) (criminal case)

- *Fair v. St. Elizabeth Med. Ctr.*,136 Ohio App.3d 522, 737 N.E.2d 106 (2d Dist.2000) (appeal from summary judgment)

- *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395, 715 N.E.2d 518 (1999), paragraph two of the syllabus

- *Roe v. Planned Parenthood Sw. Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61,

- *Leopold v. Ace Doran Hauling & Rigging Co.*, 136 Ohio St.3d 257, 2013-Ohio-3107, 994 N.E.2d 431,

- *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514,

- R.C. 5120.21 (containing a provision related to release of an inmate's medical record), and

- a notion suggesting that, as a matter of right, he is entitled to participate in a court's in camera inspection of disputed medical or mental health records, or both, when a claim of privilege is invoked.

In his first objection, construing *Frash I* and *II*, Skorvanek states that the "Tenth District in *Frash* ruled mental health records not related to diagnosis or treatment were discoverable." In *Frash I*, the appellate court determined that this court incorrectly shifted a burden to prove whether an inmate's medical and psychiatric records were privileged, stating: "The Court of Claims erred in ruling against the Estate on grounds that the Estate had failed to carry a burden that was not its to carry." *Frash I* at ¶ 25. And in *Frash II*, explaining its ruling in *Frash I*, the appellate court stated: "We reversed the decision of the Court of Claims with regard to discovery issues because that court improperly placed the burden on the party seeking the discovery to prove relevance and the absence of privilege and because it refused to review purportedly privileged records in camera to ascertain whether they were privileged." *Frash II* at ¶ 16. The court does not conclude that *Frash I* and *II* establish a bright-line rule that for purposes of discovery an inmate in a civil action against ODRC is entitled to privileged documents of nonparties, as Skorvanek suggests. Indeed, in *Frash I* the appellate court stated that "we acknowledge that communications between a licensed psychologist or physician and a patient are often privileged." *Frash I* at ¶ 26. The court finds Skorvanek's argument based on *Frash I* and *Frash II* is not persuasive.

{¶23} Besides *Frash I* and *Frash II*, Skorvanek relies on Civ.R. 34(C), which provides: "Subject to the scope of discovery provisions of Civ.R. 26(B) and 45(F), a person not a party to the action *may* be compelled to produce documents, electronically

stored information or tangible things or to submit to an inspection as provided in Civ.R. 45." (Emphasis added.) Notably, Civ.R. 45(F) states: "Nothing in this rule shall be construed to authorize a party to obtain information protected by any privilege recognized by law, or to authorize any person to disclose such information." The court concludes that Civ.R. 34(C) does not establish a bright-line rule that for purposes of discovery an inmate in a civil action against ODRC is entitled to privileged documents of nonparties, as Skorvanek suggests.

{¶24} Also unpersuasive is Skorvanek's reliance on this court's rulings in two unrelated cases—*Michael R. McGuire v Ohio Dept. of Rehab. & Corr.*, Ct. of Claims No. 93-04401 (entry dated Mar. 30, 1995), and *Charlie Hughes v. Ohio Dept. of Rehab. & Corr.*, Ct. of Claims No. 2007-03331 (entry dated Dec. 28, 2007). The court's review of these entries finds that neither of these entries contains extensive legal analysis as to the issue of privilege of confidential medical information. The court concludes that neither of these entries establishes a bright-line rule that for purposes of discovery an inmate in a civil action against ODRC is entitled to privileged documents of nonparties, as Skorvanek maintains.

{¶25} Skorvanek calls the court's attention to R.C. 2317.02(A)(2)(b). R.C. 2317.02 is a statute establishing privileged communications. Notably, at common law the physician-patient privilege did not exist. *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 15. The General Assembly "established the physician-patient privilege in R.C. 2317.02." *Ward* at ¶ 16. The purpose of the physician-patient privilege is "'to create an atmosphere of confidentiality, which theoretically will encourage the patient to be completely candid with his or her physician, thus enabling more complete treatment.'" *Ward* at ¶ 24, quoting *State Med. Bd. v. Miller*, 44 Ohio St.3d 136, 139-140, 541 N.E.2d 602 (1989). In *Ward*, the Ohio Supreme Court stated that "being in derogation of the common law, any statutory privilege must be

strictly construed against the party seeking to assert it and may be applied only to those circumstances specifically named in the statute." *Ward*, at ¶ 15.

{¶26} R.C. 2317.02(A)(2)(b) provides:

> If a health care provider possesses any records of the type described in division (B)(2)(a) of this section regarding the person in question *at any time relevant to the criminal offense in question*, in lieu of personally testifying as to the results of the test in question, the custodian of the records may submit a certified copy of the records, and, upon its submission, the certified copy is qualified as authentic evidence and may be admitted as evidence in accordance with the Rules of Evidence. Division (A) of section 2317.422 of the Revised Code does not apply to any certified copy of records submitted in accordance with this division. Nothing in this division shall be construed to limit the right of any party to call as a witness the person who administered the test to which the records pertain, the person under whose supervision the test was administered, the custodian of the records, the person who made the records, or the person under whose supervision the records were made.

(Emphasis added.) Because the nature of this case is civil, not criminal, R.C. 2317.02(A)(2)(b) is distinguishable. *See* R.C. 2743.03(A)(1) (granting to the Ohio Court of Claims the exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in R.C. 2743.02 and the exclusive jurisdiction of the causes of action of all parties in civil actions that are removed to the court of claims). Also, R.C. 2371.02(A)(2)(b) concerns what may qualify as authentic evidence and may be admitted as evidence in accordance with the Ohio Rules of Evidence. The court determines that, on its face, R.C. 2317.02(A)(2)(b) does not confer a right for a plaintiff to have access to confidential records of nonparties that are subject to a privilege.

{¶27} In addition to R.C. 2317.02, Skorvanek relies on several cases issued by the Ohio Supreme Court—*Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395, 715 N.E.2d 518 (1999), paragraph two of the syllabus, *Roe v. Planned Parenthood Sw. Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, *Ward v. Summa Health*

*Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, and *Leopold v. Ace Doran Hauling & Rigging Co.*, 136 Ohio St.3d 257, 2013-Ohio-3107, 994 N.E.2d 431.

{¶28} The Ohio Supreme Court issued *Biddle* in 1999. In *Biddle* at paragraph two of the syllabus, the court held: "In the absence of prior authorization, a physician or hospital is privileged to disclose otherwise confidential medical information in those special situations where disclosure is made in accordance with a statutory mandate or common-law duty, or where disclosure is necessary to protect or further a countervailing interest that outweighs the patient's interest in confidentiality." In 2009, ten years after *Biddle*, the Ohio Supreme Court issued *Roe, supra*, clarifying *Biddle*. *See Roe* at paragraph one of the syllabus. In *Roe*, relying on *Biddle* as authority for discovery of confidential medical records of nonparties, John and June Roe sought medical records of nonparties, arguing that discovery was necessary to protect or further a countervailing interest that outweighed a patient's interest in confidentiality. *Roe* at ¶ 46. The Ohio Supreme Court rejected this argument, stating,

> paragraph two of the syllabus in Biddle addressed the defenses to the tort of unauthorized disclosure of confidential medical information — i.e., the circumstances under which a physician or hospital may release confidential medical records in the absence of a waiver without incurring tort liability. *Biddle* did not create a litigant's right to discover the confidential medical records of nonparties in a private lawsuit. Any such exception to the physician-patient privilege is a matter for the General Assembly to address.

*Roe* at ¶ 48. *Roe* holds: "The balancing test in *Biddle v. Warren Gen. Hosp.* (1999), 86 Ohio St.3d 395, 715 N.E.2d 518, applies only as a defense to the tort of unauthorized disclosure of confidential medical information and does not create a right to discover confidential medical records of nonparties in a private lawsuit." *Roe* at paragraph one of the syllabus. Thus, neither *Biddle* nor *Roe* advances Skorvanek's contention that, as a matter of law, for purposes of discovery he is entitled to the confidential medical records of Scott Creech, a nonparty to this action.

{¶29} Skorvanek also relies on *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514 and *Leopold v. Ace Doran Hauling & Rigging Co.*, 136 Ohio St.3d 257, 2013-Ohio-3107, 994 N.E.2d 431.   Both *Ward* and *Leopold* are distinguishable.   In *Ward*, the case "involve[d] a patient who may have contracted a blood-borne disease from a health-care provider during a hospital stay. The issue for [the court's] review concern[ed] the patient's ability to obtain discovery to determine the source of his exposure."   *Ward* at ¶ 1.   *Ward* held "that *under the circumstances of this case*, R.C. 2317.02(B), the physician-patient privilege, does not preclude discovery of medical information from a patient." (Emphasis added.)   *Id.* at ¶ 34.   And in *Leopold* the Ohio Supreme Court examined "whether the physician-patient privilege protects medical records that a patient has previously disclosed in discovery to some of the same parties in previous litigation arising from the same accident."   *Leopold* at ¶ 10.   In its conclusion, *Leopold* states:

> R.C. 2317.02(B)(1) establishes the physician-patient testimonial privilege and prohibits a physician from testifying about a communication made to the physician by a patient. The General Assembly has carved out exceptions to this privilege in certain instances, and a physician may testify or be compelled to do so in any civil action if any type of civil action or claim under R.C. Chapter 4123 is filed by the patient. When the physician-patient privilege described in R.C. 2317.02(B)(1) does not apply as provided in R.C. 2317.02(B)(1)(a)(iii), a physician may testify or be compelled to do so only as to a communication that related causally or historically to physical or mental injuries relevant in the other civil action.

*Leopold* at ¶ 18.   Thus, *Ward* and *Leopold* are distinguishable from the facts presented here because this case does not concern a patient's ability to obtain discovery to determine the source of exposure to a blood-borne disease from a health-care provider, *see Roe*, *supra*, or whether the physician-patient privilege protects medical records that a patient has previously disclosed in discovery to some of the same parties in previous litigation arising from the same accident.   *See Leopold*, *supra*.

{¶30} The court is unpersuaded by Skorvanek's reliance on *Fair v. St. Elizabeth Med. Ctr.*, 136 Ohio App.3d 522, 737 N.E.2d 106 (2d Dist.2000). Notably, in *Roe*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, ¶ 47, the Ohio Supreme cited *Fair* as a case that interpreted *Biddle* as creating a right to obtain nonparty confidential medical information. Since the Second District Court of Appeals issued *Fair*, the Ohio Supreme Court in *Roe* clarified the holding contained in *Biddle*. Thus, the validity of *Fair* is subject to question. *See Bednarik v. St. Elizabeth Health Ctr.*, 7th Dist. Mahoning No. 09 MA 34, 2009-Ohio-6404, ¶ 21 ("Since *Roe* has now held that *Biddle* does not create the right to discover confidential medical records and that such records cannot be disclosed in the absence of legislative enactment, the Supreme Court has precluded appellee from forcing discovery of a non-party patient's privileged medical records (redacted or not)").

{¶31} And the court finds the Second District Court of Appeal's decision in *State v. Farthing*, 146 Ohio App.3d 720, 767 N.E.2d 1242 (2nd Dist.2001) is distinguishable. In *Farthing*, the appellate court concluded that based on certain evidence regarding a penal institution's requirement that an inmate sign a waiver with respect to mental health service, a trial court could have reasonably found that the defendant had waived his right to privileged communications with respect to a mental health counselor. *Farthing* does not establish a bright-line rule that for purposes of discovery an inmate in a civil action against ODRC is entitled to privileged documents of nonparties, as Skorvanek suggests.

{¶32} Additionally, the court finds Skorvanek's reliance on R.C. 5120.21 is unpersuasive. R.C. 5120.21 pertains to ODRC's responsibility concerning record-keeping of inmates, including medical records. As used in R.C. 5120.21, the term medical record "means any document or combination of documents that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient and that is

generated and maintained in the process of medical treatment"). R.C. 5120.21(C)(1). R.C. 5120.21(C)(2) provides:

> A separate medical record of every inmate in an institution governed by the department shall be compiled, maintained, and kept apart from and independently of any other record pertaining to the inmate. Upon the signed written request of the inmate to whom the record pertains together with the written request of either a licensed attorney at law or a licensed physician designated by the inmate, the department shall make the inmate's medical record available to the designated attorney or physician. The record may be inspected or copied by the inmate's designated attorney or physician. The department may establish a reasonable fee for the copying of any medical record. If a physician concludes that presentation of all or any part of the medical record directly to the inmate will result in serious medical harm to the inmate, the physician shall so indicate on the medical record. An inmate's medical record shall be made available to a physician or to an attorney designated in writing by the inmate not more than once every twelve months.

And R.C. 5120.21(E) provides: "Except as otherwise provided by a law of this state or the United States, the department of rehabilitation and correction may release inmate records to the department of youth services or a court of record, and the department of youth services or the court of record may use those records for the limited purpose of carrying out the duties of the department of youth services or the court of record. Inmate records released by the department of rehabilitation and correction to the department of youth services or a court of record shall remain confidential and shall not be considered public records as defined in section 149.43 of the Revised Code." The court determines that R.C. 5120.21(C) and (E) do not establish a bright-line rule that for purposes of discovery an inmate in a civil action against ODRC is entitled to confidential medical records of nonparties, as Skorvanek urges.

{¶33} Finally, Skorvanek's suggestion that, as a matter of right, he is entitled to participate in this court's in camera inspection of purportedly privileged medical or mental health records is not well-taken. An in camera inspection is defined as a "trial

judge's private consideration of evidence." *Black's Law Dictionary* 878 (10th Ed.2014). If litigants or their representatives were permitted to participate in an in camera inspection, a trial judge's consideration of the evidence would no longer be private. It follows that an in camera inspection does not contemplate participation by the parties. *See In re J.W.*, 9th Dist. Lorain No. 10CA009939, 2011-Ohio-3744, ¶ 9 ("An 'in camera inspection' means '[a] trial judge's private consideration of evidence" and does not contemplate participation by the parties. Black's Law Dictionary 775 (8th Ed. 2004)").

{¶34} Accordingly, for reasons discussed above, the court overrules Skorvanek's first and sixth objections.

### B. Objection No. 2

{¶35} In his second objection, Skorvanek maintains that the magistrate erred "in failing to consider Scott Creech had a metal cane which required a restriction which was not produced by Defendant." Skorvanek urges that the evidence establishes that Creech had a metal cane, that medical restrictions are in Creech's medical records, and that, if Creech "had a cane without a restriction approved by an advanced health care provider, this is proof of negligence."

{¶36} In his decision, the magistrate recognized that Creech had a metal cane, noting: "Plaintiff stated that in addition to having a walker and a wheelchair, Creech had a metal cane, and there were times when Creech would tap on the cane and remark how it could be used as a weapon. But, plaintiff admitted that he never told any staff members what Creech said about the cane." (Decision at 2.) The magistrate also recognized that surveillance video showed Creech striking Skorvanek on the head with a cane. (Id. at 3.) Additionally, evidence regarding Creech's authority to have a cane was presented at trial. In his decision, the magistrate stated: "Regarding the fact that Creech had a cane, [nurse Heather Hagan] testified that in 2013 inmates at Frazier Health Center were only allowed to have a cane pursuant to a doctor's order, which

Creech had." (Decision at 6.) Thus, Skorvanek's claim that the magistrate failed to consider that Creech had a metal cane is not supported by the magistrate's decision.

{¶37} It is true whether Creech was authorized to have metal cane could be used to support a claim of negligence. *See Watson*, 10th Dist. Franklin No. 11AP-606, 2012-Ohio-1017, at ¶ 7 ("To prevail on [a] negligence claim, [an inmate] must establish that (1) ODRC owed him a duty, (2) ODRC breached that duty, and (3) ODRC's breach proximately caused his injuries"); *see also Briscoe v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 02AP-1109, 2003-Ohio-3533, ¶ 15 ("As a general rule, prison officials owe inmates a duty of reasonable care and protection from harm. *Williams v. Ohio Dep't of Rehab. & Corr.* (1991), 61 Ohio Misc.2d 699, 702, 583 N.E.2d 1129."). However, because this case concerns an intentional attack of one inmate upon another inmate, whether ODRC had adequate notice of Creech's attack on Skorvanek constitutes the crux of what Skorvanek is required to prove to support his negligence claim. In *Literal v. Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 16AP-242, 2016-Ohio-8536, ¶ 16, the Tenth District Court of Appeals stated: "The law is well-settled in Ohio that ODRC is not liable for the intentional attack of one inmate by another, unless ODRC has adequate notice of an impending assault."

{¶38} The court finds Skorvanek's second objection is unpersuasive. Because Skorvanek's second objection is unpersuasive, the court overrules it.

## C. Objection No. 3

{¶39} In his third objection, Skorvanek asserts that the magistrate "erred in failing to consider Scott Creech's prison record of assaults, misconduct, and bizarre behavior, as constructive notice that Creech would attack another inmate." Skorvanek's contention that the magistrate failed to consider Creech's disciplinary history and purported "bizarre behavior" is belied by the magistrate's decision. In his decision, Magistrate Van Schoyck states:

Plaintiff also contends that Creech had a disciplinary history and mental illness sufficient to put defendant on notice of an impending attack, but this is not borne out by the evidence. Borgmann testified that he had witnessed Creech strike an inmate with a cane in the restroom before, but even if that is true there is no evidence that the staff knew about Creech ever using his cane as a weapon, nor is there any evidence of him ever assaulting someone with hot water before. Plaintiff offered documents from Creech's disciplinary file dating back to the early 1980s, but the records do not remotely suffice to alert defendant to any likelihood of Creech's attack on plaintiff. For sure, Creech had been disciplined for a variety of infractions, but those infractions were accumulated over more than three decades in prison and nearly all of them were nonviolent in nature. And, based upon annual reviews of Creech's security classification, he was considered to be at the lowest possible security level. There are records evidencing that Creech was disciplined in 2002 for fighting with another inmate at the Lebanon Correctional Institution, and that he was disciplined in 2000 for attempting to strike another inmate with a lock attached to a belt at the North Central Correctional Institution over the theft of some cigarettes, but these incidents were remote in time- by more than ten years-from the attack on plaintiff and clearly do not constitute a pattern of violence that could even arguably confer defendant with notice that the attack by Creech was impending at any moment.

(Decision at 13-14.)   Thus, it is manifest that in reaching his determination the magistrate considered Creech's prison record and behavior.  And, as outlined by the magistrate, Creech's disciplinary history is distinguishable from the assailant's history in *Frash*.  *See Frash I* at ¶ 18 (stating that the assailant in *Frash* had "a very extensive history of hurting his fellow inmates and was incarcerated in 1976 for violently injuring and killing other persons. Between 1984 and 1999 [the inmate] participated in five assaults, including stabbing another inmate in the chest with upholstery shears in 1984, stabbing his cellmate in 1988 (resulting in an attempted murder conviction), stabbing two other inmates in 1994 and 1999, and cutting another inmate's face with a can lid in 1996").

{¶40} The court finds Skorvanek's third objection is not persuasive.  Having found Skorvanek's third objection is unpersuasive, the court overrules it.

### D. Objection Nos. 4 and 5

{¶41} In his fourth objection, Skorvanek contends that the magistrate erred "when he failed to consider Defendant's total lack of security in the medical bay where Plaintiff was housed as negligence in not protecting the safety of disabled inmates of varying security level, up to level 3."  And in his fifth objection, Skorvanek maintains that the magistrate erred "in failing to consider [Corrections Officer] Long had to make rounds in three separate bays and was the only officer providing security for 160 inmates preventing any ability to prevent assaults and protect inmates' safety."  When the fourth and fifth objections are distilled to their essence, they take issue with the allocation and location of correctional staff in the dormitory where Skorvanek was housed and the weight that the magistrate gave to evidence concerning the allocation and location of correctional staff.

{¶42} In *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-1052, 2010-Ohio-4736, ¶ 17, the Tenth District Court of Appeals stated that "with respect to penal institutions, prison administrators must be accorded deference in adopting and executing policies and procedures to maintain order."  *Hughes* further states: "Given the facts of this case, we conclude that decisions relating to the allocation and location of correctional staff concern prison security and administration and, as such, are executive functions that involve a high degree of official discretion. Accordingly, the ODRC is entitled to discretionary immunity."  *Id.* at ¶ 18.  Thus, in accordance with *Hughes*, ODRC's allocation of correctional staff to maintain security in its dormitory is entitled to some deference because it concerns an executive function that involves a high degree of official discretion.

{¶43} Additionally, it is established that "the state is not an insurer of inmate safety and owes the duty of ordinary care only to inmates who are foreseeably at risk." *Woods v. Ohio Dept. of Rehab. & Corr.*, 130 Ohio App.3d 742, 745, 721 N.E.2d 143 (10th Dist.1998); *see Frash I*, at ¶ 8 ("ODRC owes inmates a common-law duty of

reasonable care and protection from unreasonable risks"). And, as the Tenth District Court of Appeals noted: "Succinctly stated, the ODRC is not liable for the intentional attack on one inmate by another unless it had adequate notice, either actual or constructive, of an impending attack." *Hughes* at ¶ 14; *Literal* at ¶ 16.

**{¶44}** In his decision, the magistrate discussed the testimony of Debra Long, who served as a corrections officer in the Frazier Health Center from 2011 to 2016. As noted by the magistrate: "As a corrections officer at that time, Long stated, she was responsible for providing security throughout the facility, and she had to make rounds every 25 to 30 minutes through the three bays (west, east, and north) which each had several rows of beds in them. Long explained that the officers' desk was in the central area between the bays. Long testified that from the desk she could see through windows into the bays, which altogether housed about 160 inmates at that time." (Decision at 7-8.) The magistrate further noted: "Long indicated that inmates were free to come up and talk to her, but that she never heard any complaints about Creech before the attack, and she was not able to remember there ever being a prior inmate-on-inmate altercation in the facility. Long also indicated that she had never before known of an inmate to use hot water as a weapon, and she stated that inmates had been using microwaves extensively since Frazier Health Center opened in 2009." (Decision at 8.)

**{¶45}** Thus, notwithstanding Skorvanek's claim of a "total lack of security in the medical bay where Plaintiff was housed" in his fourth objection, it is evident that there was security in the medical bay. And, notwithstanding Skorvanek's quibble with the amount of security in the prison's dormitory, as raised in his fifth objection, evidence exists that establishes that the dormitory where the incident occurred was staffed with medical personnel and protected by a security camera with security staff nearby. (Plaintiff's Exhibit 9.)

{¶46} Additionally, based on the court's review of the evidence, there is evidence to support the magistrate's determination that "defendant did not have notice, either actual or constructive, that the attack was impending." (Decision at 12.) In this case, the magistrate, as the trier-of-fact, could believe or disbelieve Long, as well as other witnesses, or accept part of what was said and reject the rest. *See State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *see also Siegel v. State*, 2015-Ohio-441, 28 N.E.3d 612, ¶ 12 (10th Dist.) (this court may appropriately give weight to a magistrate's assessment of witness credibility in view of the magistrate's firsthand exposure to the evidence, but the trial court is required to independently assess the evidence and reach its own conclusion).

{¶47} Upon review, the court finds Skorvanek's fourth objection and fifth objections are unpersuasive. As the Tenth District Court of Appeals has remarked, "it is the inevitable nature of penal institutions that they will contain a fair proportion, perhaps a preponderance, of violent and dangerous individuals." *Kordelewski v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. Franklin No. 00AP-1109, 2001 Ohio App. LEXIS 2730, at *10 (June 21, 2001). And, as the magistrate noted: "The attack upon plaintiff appears to have been a senseless act of violence and the magistrate is sensitive to the serious injuries that plaintiff suffered." (Decision at 12.)

{¶48} For reasons set forth above, the court overrules Skorvanek's fourth objection and fifth objection.

## E. Objection No. 7

{¶49} In the seventh objection, Skorvanek states that the magistrate erred "in permitting a witness to give an opinion the sealed records were all privileged." In support of his seventh objection, Skorvanek states: "The Defendant is not authorized or entitled to decide the issue of privilege. The witness may testify the records related to treatment and diagnosis, but the witness cannot decide the issue since the courts have found other basis to defeat confidentiality and the court has this responsibility." Notably,

Skorvanek fails to identify the witness to whom he refers in his seventh proposition of law and the portion of the record where purported error occurred. Presumably, Skorvanek refers to defense witness Meredith Rinna, Mental Health Administrator of the Toledo Correctional Institution, whom ODRC had consulted when determining whether documents should be disclosed to plaintiff during discovery. (See Tr., 18-19.) At trial, in ODRC's case-in-chief, plaintiff's counsel objected to a question posed by ODRC's counsel to Rinna, which asked whether ODRC's mental health staff considered certain documents "privileged," and plaintiff's counsel moved to strike Rinna's response. (Tr., 149.) Before ruling on plaintiff's objection, the court asked: "You mean from a policy standpoint, the way they are kept confidential within DRC as opposed to a legal determination here in this Court?" (Tr., 149-50.) Defense counsel explained: "I'm not asking an ultimate question, no. I'm asking what does the Department consider: Do they open it up to others or do that [sic] consider it privileged." (Tr., 150.) The court then questioned Rinna, asking: "Is that how you understand the question then?" (Tr., 150.) Rinna answered affirmatively and the court overruled plaintiff's objection. (Tr., 150.) Thus, Rinna was not asked—nor permitted—to render a determination, as a matter of law, whether a particular document filed under seal in this case is privileged.

{¶50} Whether information sought is confidential and privileged from disclosure presents a question of law. *See Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13 ("whether the information sought is confidential and privileged from disclosure is a question of law that is reviewed de novo"). And as early as 1922, the Ohio Supreme Court remarked: "The fundamental proposition upon which the whole structure of our system of jurisprudence rests is that the court decides all questions of law." *Miami Conservancy Dist. v. Ryan*, 104 Ohio St. 79, 84, 135 N.E. 282 (1922).

{¶51} Here, Skorvanek in his seventh objection fails to identify where purported error occurred. Civ.R. 53(D)(3)(b)(ii) provides that an objection to a magistrate's

decision "shall be specific and state with particularity all grounds for objection." To the extent that Skorvanek's seventh objection does not identify where purported error occurred, this objection is not specific and does not comport with Civ.R. 53(D)(3)(b)(ii)'s requirement for specificity. And Skorvanek's argument in support of his seventh proposition of law—i.e., that a court is authorized to determine whether disputed documents are privileged—states a truism. The court finds Skorvanek's seventh objection is not persuasive. Because Skorvanek's seventh objection is unpersuasive, the court overrules it.

### F. Objection No. 8

{¶52} In his eighth objection, Skorvanek maintains that the magistrate erred "when he considered and ruled on objections not made during the taking of a deposition and which were not provided to plaintiff's counsel sooner than seven days before trial." Based on Skorvanek's citation to the trial transcript (i.e., "R. 136"), his eighth objection appears to concern the magistrate's ruling pertaining to ODRC's motion in limine and plaintiff's exhibit 12—a deposition of inmate-witness George Borgmann. Skorvanek urges: "Simply stated, there should have been no consideration of [the defense objection] because of late filing of objection and the prejudice caused by not being able to rephrase or ask a question which would not have been subject to objection. (Emphasis added.)"

{¶53} Skorvanek's eighth objection concerns an application of Civ.R. 32, which pertains to the use of depositions in court proceedings. Pursuant to Civ.R. 32(A)(3)(a), the deposition of a witness, whether or not a party, "may be used by any party for any purpose if the court finds: * * * (c) that the witness is unable to attend or testify because of * * * imprisonment * * *." Civ.R. 32(B) provides: "Subject to the provisions of subdivision (D)(3) of this rule, objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying. Upon the

motion of a party, or upon its own initiative, the court shall decide such objections before the deposition is read in evidence." And Civ.R. 32(D)(3), which is referenced in division (B), states:

{¶54} As to taking of depositions.

(a) Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.

(b) Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless reasonable objection thereto is made at the taking of the deposition.

(c) Objections to the form of written questions submitted under Rule 31 are waived unless served in writing upon the party propounding them within the time allowed for serving the succeeding cross or other questions and within seven days after service of the last questions authorized.

A review of the trial transcript discloses Skorvanek's reference (R. 136) pertains to a discussion by counsel that begins on page 135 of the transcript concerning an objection based on hearsay raised by ODRC in its motion in limine with regard to inmate-witness Borgmann's deposition testimony at page 16, line 16. The court ultimately overruled ODRC's objection. (Tr. 137.) Because the court overruled ODRC's objection, it follows that Skorvanek did not sustain prejudice, notwithstanding Skorvanek's claim that the court should not have considered ODRC's objection to Borgmann's testimony because ODRC should have objected in the first instance at the taking of Borgmann's deposition. In this instance, Skorvanek's claim of error, as raised in his eighth objection, constitutes harmless error. *See* Civ.R. 61 (stating in part that the court at every stage of the

proceeding "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties"). And Skorvanek's contention that the magistrate should not have considered any of the objections raised by ODRC in its motion in limine is belied by Skorvanek's response in opposition to ODRC's motion in limine wherein he urged that the "depositions should be read during trial and the court can then properly rule." The court finds Skorvanek's eighth objection is unpersuasive. Because Skorvanek's eighth objection is not persuasive, the court overrules it.


### G. Objection No. 9

{¶55} Skorvanek's ninth objection asserts that the magistrate's determination is against the manifest weight of the evidence and contrary to law. In *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), discussing the concept of weight of the evidence, the Ohio Supreme Court stated: "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's, supra, at 1594." *Thompkins* further states that, when an appellate court reverses a trial court's judgment on the basis that a verdict is against the manifest weight of the evidence, the appellate court

> sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S. Ct. at 2218, 72 L. Ed. 2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App. 3d 172, 175, 20 Ohio B. Rep. 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Thompkins* at 387. Since the Ohio Supreme Court issued *Thompkins*, it has recognized that the *Thompson* standard of review for manifest weight of the evidence applies in civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17-23.

{¶56} Upon independent review of the record before it, the court determines that the magistrate, as the trier-of-fact, did not lose his way when he determined that Skorvanek failed to prove by a preponderance of the evidence that ODRC was negligent in failing to prevent an attack upon Skorvanek by Creech. The court further determines that the magistrate did not lose his way when he determined that ODRC did not have notice, either actual or constructive, that the Creech's attack upon Skorvanek was impending. The court therefore concludes that the magistrate's decision is not against the manifest weight of the evidence or contrary to law. The court determines Skorvanek's ninth objection is not persuasive. Finding Skorvanek's ninth objection is unpersuasive, the court overrules it.

**Conclusion**

{¶57} Wherefore, upon independent review as to the objected matters, the court determines that Skorvanek's objections of January 17, 2017 to the magistrate's decision of November 16, 2016 should be overruled. The court finds that the magistrate has properly determined the factual issues and appropriately applied the law related to Skorvanek's claim of negligence. The court further determines that the magistrate's decision and recommendation should be adopted as its own and that judgment should be rendered in favor of ODRC.

 

 

PATRICK M. MCGRATH

Judge

[Cite as *Skorvanek v. Ohio Dept. of Rehab. & Corr.*, 2017-Ohio-2694.]

| JOHN M. SKORVANEK | Case No. 2014-00845 |
|---|---|
| Plaintiff | Judge Patrick M. McGrath |
| v. | <u>JUDGMENT ENTRY</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶58} For the reasons set forth in the decision filed concurrently herewith, upon independent review as to the objected matters, the court OVERRULES plaintiff's objections. The court finds that the magistrate has properly determined the factual issues and appropriately applied the law. The court adopts the magistrate's decision and recommendation as its own. Judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
PATRICK M. MCGRATH
Judge

cc:

Richard F. Swope
6480 East Main Street, Suite 102
Reynoldsburg, Ohio 43068

Christopher L. Bagi
Eric A. Walker
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed March 2, 2017**
**Sent to S.C. Reporter 5/5/17**